EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA,
APPELLANT/RESPONDENT v. WILLIAM PEACE, ˙APPELLEE/PETITIONER

---

No. COA95-678

EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA,
APPELLEE/RESPONDENT v. WILLIAM H. PEACE, III, APPELLANT/PETITIONER

No. COA94-1283

(Filed 2 December 1997)

**1. Administrative Law and Procedure § 9 (NCI4th); Labor and Employment § 120 (NCI4th)— Title VII retaliatory discharge claim—jurisdiction of OAH**

The Office of Administrative Hearings (OAH) had jurisdiction to hear an ESC employee's claim for retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964 and did not act *ultra vires* in adjudicating such claim. The OAH does not function as a court in violation of N.C. Const. art. IV, § 1 when making final agency decisions on Title VII charges deferred from the Equal Employment Opportunity Commission. N.C.G.S. § 7A-759.

**2. Labor and Employment § 121 (NCI4th)— Title VII claim— burden of proof**

Plaintiff carries the initial burden of proof in Title VII retaliatory discharge cases. In order to make a *prima facie* showing

1

of a Title VII retaliatory discharge, plaintiff must show that (1) he engaged in protected activity, (2) the employer took adverse employment action against plaintiff, and (3) a but for causal connection existed between the protected activity and the adverse action. If plaintiff presents a *prima facie* case of retaliation, defendant employer must articulate a legitimate nondiscriminatory reason for its action. If defendant employer shows a legitimate reason that overcomes the presumption of discrimination from plaintiff's *prima facie* showing, plaintiff then has to show that the reason was only a pretext for the retaliatory action.

### 3. Labor and Employment § 121 (NCI4th)— Title VII action— burden of proof

The Office of Administrative Hearings erred in placing the initial burden on defendant employer to show an absence of retaliatory purpose in a Title VII retaliatory discharge case prior to plaintiff employee's *prima facie* showing of a retaliatory discharge.

### 4. Public Officers and Employees § 66 (NCI4th)— state employee—continued employment—property interest— due process

A state employee had a property interest in continued employment created by N.C.G.S. § 126-35 and protected by the Due Process Clause of the United States Constitution.

### 5. Public Officers and Employees § 66 (NCI4th)— state employee—dismissal for just cause—burden of proof

The employer had the initial burden to produce evidence that a state employee was dismissed for "just cause," and the employee must then come forward with evidence that his or her dismissal was without "just cause."

### 6. Public Officers and Employees § 66 (NCI4th)— state employee—dismissal for just cause—burden on employee— due process

Placing the burden of proof on the state employee in determining whether the employee was dismissed for "just cause" within the purview of N.C.G.S. § 126-35 does not pose a substantial threat of erroneous termination and thus does not violate due process.

Judge Greene dissenting in part.

**EMPLOYMENT SECURITY COMM. v. PEACE**

[128 N.C. App. 1 (1997)]

Appeal by Employment Security Commission from order entered 12 August 1994 in case 93 CVS 10599 by Judge Narley L. Cashwell in Wake County Superior Court, affirming a final order of the Office of Administrative Hearings reinstating Peace as an Equal Employment Opportunity Commission Officer based on retaliatory discharge. Appeal by Peace from an order entered 13 March 1995 in case 94 CVS 11517 by Judge Wiley F. Bowen in Wake County Superior Court, which order concluded that "just cause" existed for terminating Peace and reversed the State Personnel Commission's decision that Peace be reinstated. Both *Peace* appeals were thereafter consolidated and were originally heard in the Court of Appeals on 7 May 1996. *See Employment Security Comm. v. Peace*, 122 N.C. App. 313, 740 S.E.2d 63 (1996), *disc. review allowed and remanded*, 345 N.C. 640, 483 S.E.2d 706 (1997). Heard on grant of discretionary review in the Supreme Court on 11 June 1996. The cases *sub judice* were then remanded to this Court for reconsideration in light of the Supreme Court's ruling in *Soles v. The City of Raleigh Civil Service Comm.*, 345 N.C. 443, 480 S.E.2d 685, *reh'g denied*, 345 N.C. 761, 485 S.E.2d 299 (1997). Heard on remand in the Court of Appeals on 1 April 1997.

*Attorney General Michael F. Easley, by Chief Deputy Attorney General Andrew A. Vanore, Jr., and Assistant Attorney General Valerie Bateman, for North Carolina Department of Justice; and Chief Counsel T.S. Whitaker and Attorney Fred R. Gamin, for North Carolina Employment Security Commission, respondent appellant (No. COA94-1283), respondent appellee (No. COA95-678).*

*Hilliard & Jones, by Thomas Hilliard, III, for petitioner appellant (No. COA95-678).*

*William H. Peace, III, petitioner appellee (No. COA94-1283), pro se.*

SMITH, Judge.

On 15 October 1985, William H. Peace, III ("Peace"), began his employment with respondent Employment Security Commission ("ESC") as its Equal Employment Opportunity ("EEO") officer. On 10 April 1991, an incident between Peace and a coworker ultimately led to Peace's dismissal for alleged unacceptable personal conduct. The State Personnel Commission ("SPC") adopted, *inter alia*, the following facts as recommended by the Administrative Law Judge ("ALJ"): During his 1985 orientation, Peace was informed that by paying $2.00

per month to the Personnel Office petty fund, he would be entitled to obtain an occasional cup of coffee from a pot located in the personnel file room. He paid the dues; however, his usual practice was to go to the agency's cafeteria for morning coffee. Prior to 10 April 1991, no one informed Peace that his payment into the petty fund did not entitle him to obtain coffee from the personnel file room. Over the years, on an irregular basis, he obtained coffee from the petty fund coffee pot. At a staff meeting which Peace did not attend, a coffee fund of $3.40 per month was established for any interested participants. Peace was not made aware of a separate coffee fund, nor was he asked to join.

On 10 April 1991, Peace got a cup of coffee from the personnel file room. As Peace was leaving the office with the coffee, an exchange took place with Ms. Catherine High, a supervisor in the personnel office, in which she told him that he should pay her for the coffee. Peace refused. Ms. High called Peace "despicable" and told him she hoped he was fired. She told Peace that if he got another cup of coffee and did not pay her, she would get a cup of coffee and scald him with it. Ms. High informed her supervisor and Mr. Gene Baker, who became Peace's immediate supervisor as of 22 April 1991, of the incident.

On the afternoon of 10 April 1991, Peace contacted the magistrate's office regarding the incident with Ms. High. Peace was informed that, if he believed Ms. High was capable of carrying out her threat, he should take out a warrant against her. Peace spoke with Ms. High following his conversation with the magistrate's office, at which time he gave her an opportunity to apologize. Ms. High did not apologize. Thereafter, Peace had the magistrate's office issue summons against Ms. High charging her with communicating a threat. The charge was dismissed by the trial court as frivolous and Peace was ordered to pay court costs.

Peace was not contacted by his superiors regarding the incident until he received a predismissal conference memorandum on 5 June 1991, from Gene Baker, his immediate supervisor. Following a 6 June dismissal conference, Peace was discharged for unacceptable personal conduct. In a 7 June letter, Ann Q. Duncan, Chairperson of ESC, explained that Peace was being dismissed for unacceptable conduct, including taking the coffee without paying Catherine High and filing criminal charges against High, which were found to be frivolous. Such conduct, said Duncan, caused Peace's reputation as the EEO

officer at ESC to be called into question and his respect among fellow employees diminished.

Peace filed two appeals of the ESC decision to discharge him. The bases of his appeals were that ESC lacked "just cause" to dismiss him pursuant to N.C. Gen. Stat. § 126-35 (1991), and that he had been discharged in retaliation for having filed discrimination charges against ESC in 1989, for violation of Title VII, Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 (1988). Peace did not appeal upon a state claim of retaliatory discharge pursuant to N.C. Gen. Stat. § 126-36 (1987). Pursuant to N.C. Gen. Stat. § 7A-759 (1987), Peace's charge of retaliatory discharge was investigated by the Civil Rights Division of the Office of Administrative Hearings.

Through its investigation, the Office of Administrative Hearings ("OAH") found reasonable cause to believe that a violation of Title VII had occurred. OAH presented Peace with three options. He could: (1) receive a right to sue letter; (2) commence a contested case hearing in OAH; or (3) do nothing. Peace chose to commence a contested case hearing with regard to the retaliatory discharge claim. He also filed a petition for contested case hearing pursuant to N.C. Gen. Stat. § 126-35 on his lack of "just cause" claim. Pursuant to an order of the Chief Administrative Law Judge of OAH, both cases were consolidated for hearing. A hearing was conducted by ALJ Sammie Chess on 12-14 July 1993.

Pursuant to N.C. Gen. Stat. § 7A-759(e), an ALJ decision on the merits of a retaliatory discharge claim is a final agency decision binding on the parties absent a petition for judicial review. *See* N.C. Gen. Stat. § 150B-45 (1987). However, with regard to the N.C. Gen. Stat. § 126-35 lack of "just cause" claim, an ALJ issues a recommended decision to SPC, which then issues a final agency decision also subject to judicial review. N.C. Gen. Stat. § 126-37 (1991). ALJ Chess issued two separate decisions following the hearing. In his recommended decision to SPC, ALJ Chess found that ESC had the burden of proving it had "just cause" to discharge petitioner. ALJ Chess concluded that ESC had failed to meet that burden and recommended Peace be reinstated. In his final decision regarding the retaliatory discharge claim pursuant to Title VII, ALJ Chess also placed the burden of proof on ESC and concluded that Peace's discharge violated Section 704(a) of Title VII of the Civil Rights Act of 1964, in that his dismissal was retaliatory. Pursuant to that holding, ALJ Chess ordered petitioner reinstated.

The ALJ's recommended decision reinstating Peace for lack of "just cause" was adopted, with slight modification, by SPC. ESC appealed SPC's final decision and the ALJ's final decision separately, pursuant to N.C. Gen. Stat. § 150B-50 (1987). In a 13 August 1994 order, Judge Narley L. Cashwell upheld the final agency decision of the ALJ with regard to the retaliatory discharge claim in which Peace was ordered reinstated. In a 13 March 1995 order, Judge Wiley F. Bowen reversed the final decision of SPC and dismissed Peace's petition challenging his dismissal on the "just cause" claim. ESC appeals Judge Cashwell's order affirming the retaliatory discharge claim. Peace appeals Judge Bowen's order reversing the SPC decision to reinstate him.

The proper standard of review for the superior court " 'depends upon the particular issues presented on appeal.' " *Act-Up Triangle v. Commission for Health Services of the State of North Carolina*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (citation omitted). If petitioner asks: " '(1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the "whole record" test.' " *Id.* (quoting *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993). Under the whole record test, a reviewing court is required to examine all competent evidence in order to determine whether the agency decision is supported by substantial evidence. *Id.* The definition of substantial evidence includes " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 707, 483 S.E.2d at 393 (citation omitted). Furthermore, in making arbitrary or capricious determinations concerning the agency decision, the reviewing court " 'does not have authority to override decisions within agency discretion when that discretion is exercised in good faith and in accordance with law.' " *Id.* at 707, 483 S.E.2d at 393 (citation omitted).

Appellate review of a superior court order concerning an agency decision requires an examination of the trial court's order for any errors of law. *Id.* at 706, 483 S.E.2d at 392. The two tasks involved include: " '(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *Id.* (citation omitted). The whole record test allows a reviewing court to determine whether an administrative decision has a rational basis in the evidence. *Id.* at 706-07, 483 S.E.2d at 392.

As the reviewing court in the "just cause" case, we must take into account the specialized expertise of the staff of an administrative agency; in this case, the SPC. *See High Rock Lake Assoc. v. Environmental Management Comm.*, 51 N.C. App. 275, 279, 276 S.E.2d 472, 475 (1981). While there is evidence in the record contrary to the Commission's findings, neither this Court nor the superior court may substitute its judgment for that of the agency. After reviewing the record, we find substantial evidence to support the State Personnel Commission's findings of fact.

At the outset, we note that the actions of both Peace and High were inappropriate and childlike. As a result of both parties' improper behavior and subsequent refusals to resolve their differences amicably as adults, this matter has involved years of litigation and, as yet, remains unresolved. If there was ever a case that could have been resolved by the parties and participants in an employment controversy and was not, then this must be that case.

## I. Title VII Retaliatory Discharge Claim

### A. The Jurisdiction of OAH in Title VII Cases

[1] As a preliminary matter, we address ESC's argument that the trial court erred in failing to find OAH did not have jurisdiction to hear Peace's Title VII retaliatory discharge claim, and also in failing to find OAH acted *ultra vires* by adjudicating such claim. ESC contends that only courts, and not administrative agencies, have jurisdiction to hear Title VII cases, and if OAH is authorized to hear Title VII claims, then it is functioning as a court in violation of N.C. Const. art. IV, § 1.

N.C. Const. art. IV, § 1 provides:

The judicial power of the State shall, except as provided in Section 3 of this Article, be vested in a Court for the Trial of Impeachments and in a General Court of Justice. The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-ordinate department of the government, nor shall it establish or authorize any courts other than as permitted by this Article.

N.C. Const. art. IV, § 3 permits the General Assembly to vest in administrative agencies established pursuant to N.C. Const. art. III, § 11 as part of the executive branch, such judicial powers as are reasonably necessary to accomplish the purposes for which the agencies were

created, and also directs that appeals from such agencies shall be to the General Court of Justice.

Title VII authorizes the Equal Employment Opportunity Commission ("EEOC") to enter into worksharing agreements with state and local agencies charged with the administration of state fair employment practices laws in order to fulfill its duty of preventing unlawful employment practices. 42 U.S.C. 2000e-8(b) (1988). When an alleged unlawful employment practice occurs in a state that has a law prohibiting the alleged practice and has established a state or local authority to grant or seek relief from such practice, Title VII provides that " 'no charge may be filed [with the EEOC] . . . by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated.' " *Davis v. North Carolina Dept. of Correction,* 48 F.3d 134, 137 (4th Cir. 1995) (quoting 42 U.S.C. 2000e-5(c) (1988)). Thus, where state law protects against the kind of discrimination alleged, Title VII requires that plaintiffs resort to state and local remedies before seeking relief under federal law. *Id.* N.C. Gen. Stat § 7A-759 designates OAH as the State's deferral agency for cases deferred by the EEOC as provided in 42 U.S.C. 2000e-5.

N.C. Gen. Stat. § 7A-759(e) provides that orders entered by an ALJ after a contested case hearing on the merits of a deferred charge is a final agency decision binding on the parties, and that an ALJ may order whatever remedial action is necessary to give full relief consistent with the requirements of federal statutes and regulations. However, an ALJ's decision with respect to a deferred charge is not a judicial decision, but rather a final agency decision. This becomes apparent upon an evaluation of the rationale for the creation of OAH. According to the Administrative Procedure Act as originally adopted, 1973 N.C. Sess. Laws ch. 1331, § 150-30(a), the presiding officers for administrative hearings were designated by either an agency itself or by statute. In an effort to obtain nonbiased hearing officers with specialized knowledge of the issues presented, the General Assembly created OAH, an independent, quasi-judicial agency in order to "provide a source of independent hearing officers to preside in administrative cases and thereby prevent the commingling of legislative, executive, and judicial functions in the administrative process." N.C. Gen. Stat. § 7A-750 (1985). Thus, because OAH was established as part of the executive branch pursuant to N.C. Const. art. III, § 11, it is not a court, and does not function as such when making final agency decisions on charges deferred from EEOC. *See also Utilities*

*Commission v. Finishing Plant,* 264 N.C. 416, 422, 142 S.E.2d 8, 12 (1965) ("Administrative agencies . . . are distinguished from courts. They are not constituent parts of the General Court of Justice.")

To support its argument that only courts, and not administrative agencies, have the authority to hear Title VII claims, ESC cites footnote four in *Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820, 108 L. Ed. 2d 834 (1990). This footnote points out that Congress opted for judicial, rather than administrative enforcement of Title VII claims. *Id.* at 825, 108 L. Ed. 2d 840 n.4. However, this footnote precisely states Congress "preferred that the ultimate determination of discrimination rest with the Federal judiciary," and not EEOC. *Id.* The Court does not attempt to say that state administrative agencies have no authority to hear Title VII claims. In fact, the Court, when discussing the 60-day delay found in 42 U.S.C. 2000e-5(c), says that such delay "is designed to give state administrative agencies an opportunity to invoke state rules of law." *Yellow Freight System, Inc.,* 494 U.S. at 825, 108 L. Ed. 2d at 841. In light of this language and the plain language of Title VII, we conclude the trial court did not err in failing to find that OAH did not have jurisdiction to hear Peace's Title VII claim, or that OAH acted *ultra vires* by adjudicating such claim.

## A. Burden of Proof in Title VII Cases

**[2]** According to the North Carolina Supreme Court, the claimant carries the initial burden of proof in Title VII cases. *See North Carolina Department of Correction v. Gibson,* 308 N.C. 131, 137, 301 S.E.2d 78, 87 (1983). In addition, a prima facie showing of retaliatory discharge requires a plaintiff to show: (1) he engaged in some protected activity, such as filing an EEO complaint; (2) the employer took adverse employment action against plaintiff; and (3) that the protected conduct was a substantial or motivating factor in the adverse action (a causal connection existed between the protected activity and the adverse action). *See Kennedy v. Guilford Technical Community College,* 115 N.C. App. 581, 584, 448 S.E.2d 280, 282 (1994) (adopting the federal rules on prima facie showing in a state retaliatory discharge claim) (plaintiff claimed she was retaliated against for filing race and sex discrimination charges with the EEOC). Petitioner must prove "but for" causation instead of "motivating factor" in his prima facie case of retaliatory acts in violation of Title VII. *Id.*

After plaintiff presents a prima facie case of retaliation, " 'the burden shifts to the defendant to show it would have taken the same action even in the absence of protected conduct' ". *Id.* (quoting

*McCauley v. Greensboro City Bd. of Educ.*, 714 F.Supp. 146, 153 (M.D.N.C. 1987)). Defendant must articulate a legitimate nondiscriminatory reason for its action. *Id.* at 584-85, 448 S.E.2d at 282. A legitimate reason overcomes the presumption of discrimination from plaintiff's prima facie showing if it has " 'a rational connection with the business goal of securing a competent and trustworthy work force.' " *Id.* at 585, 448 S.E.2d at 282 (quoting *Harris v. Marsh*, 679 F.Supp. 1204, 1285 (E.D.N.C. 1987), *aff'd in part, rev'd in part on other grounds by Blue v. U.S. Dept. of Army*, 914 F.2d 525 (4th Cir. 1990)).

If defendant shows a legitimate reason that overcomes the presumption, plaintiff then has to show that the reason was only a pretext for the retaliatory action. *Id.* Therefore, " 'a plaintiff retains the ultimate burden of proving that the [adverse employment action] would not have occurred had there been no protected activity' engaged in by the plaintiff." *Id.* (quoting *Melchi v. Burns Int'l Sec. Servs. Inc.*, 597 F.Supp. 575, 583 (E.D. Mich. 1984)).

[3] In the instant case, plaintiff Peace claims the true reason he was discharged is because he filed discrimination claims against the EEOC in 1989, a protected activity, instead of the proffered reasons surrounding the coffee incident in 1991. However, the ALJ erred by placing the initial burden of proof on the defendant employer to show an absence of retaliatory purpose prior to Peace's prima facie showing of retaliatory discharge. Since the trial court affirmed the ALJ who had improperly placed the burden of proof on ESC, this retaliatory discharge claim must be reversed and remanded to the lower court for further remand to OAH for proceedings not inconsistent with this opinion.

## II. "Just Cause" Claim

With respect to his "just cause" claim, Peace contends the trial court erred in determining that SPC's decision and order improperly placed the burden of proof on ESC. He argues that because ESC is in a better position to "ferret out the reasoning behind his termination" than he is, ESC should have the burden of proof.

[4] N.C. Gen. Stat. § 126-35 states, in pertinent part, "[n]o career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." It is undisputed in the instant case that Peace had a property interest of continued employment created by N.C. Gen. Stat. § 126-35 and pro-

**EMPLOYMENT SECURITY COMM. v. PEACE**

[128 N.C. App. 1 (1997)]

tected by the Due Process Clause of the United States Constitution. *See Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 348, 342 S.E.2d 914, 921, *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986). In *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33 (1976), the United States Supreme Court set forth three factors to be considered in determining what process is due when an individual is faced with the deprivation of a property interest:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

We acknowledge that the private interest affected, the first factor to be considered under the *Mathews* test, is of the utmost importance. Courts "have frequently recognized the severity of depriving a person of the means of livelihood." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543, 84 L. Ed. 2d 494, 504 (1985). We also acknowledge the State's substantial interest in maintaining employee discipline and efficiency.

> [T]he Government's interest, and hence the public's interest, is the maintenance of employee efficiency and discipline. Such factors are essential if the Government is to perform its responsibilities effectively and economically. To this end, the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs.

*Arnett v. Kennedy*, 416 U.S. 134, 168, 40 L. Ed. 2d 15, 41 (1974). The central issue in the present case concerns the second *Mathews* factor: whether placing the burden of proof on an employee to show he was terminated without "just cause" creates a substantial risk of erroneous termination.

We first note the absence of a statute or other authority allocating the burden of proof in "just cause" claims. Though we attempt to place such burden in a manner that will obviate the risk of erroneous termination, we believe the burden of proof would have been more properly allocated by our General Assembly, or even possibly by SPC pursuant to the rule-making authority found in N.C. Gen. Stat. §§ 126-4 (6), (7a), (9), and (11) (1995) and 126-26 (1995).

According to 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 30 (4th ed. 1993), the burden of proof encompasses both the burden of producing evidence and the burden of persuasion. The burden of producing evidence is the burden of a party to satisfy the trier of fact that sufficient evidence has been presented to justify a finding in that party's favor. *Id.* The burden of persuasion is the burden of convincing the trier of fact. *Id.* This burden generally falls on the party who will lose if the trier of fact is in doubt after all the evidence is in. *Id.*

[5] When statutes fail to dictate with whom the burden of persuasion lies, the burden is judicially allocated based on "considerations of policy, fairness and common sense . . . ." *Id.* at § 37. For cases in which the burden of proof remains unallocated, it has been suggested that the burden be placed "upon the party who has peculiar knowledge of the facts and who, therefore, is better able to produce proof." *Id.* In the instant case, the party having particular knowledge as to the cause of Peace's dismissal is ESC. An employee allegedly dismissed for "just cause" would be faced with an almost insurmountable task in attempting to prove he or she was dismissed for something short of "just cause," in that the employee would be forced to prove a negative. We believe the better view is to allocate the initial burden of proof to the employer to prove that an employee was dismissed for "just cause" and then have the employee come forward with evidence showing that his or her dismissal was made without "just cause." Here, SPC expressly adopted the ALJ's Conclusion of Law Number 2, which states "[w]here just cause is an issue, the Respondent [ESC] bears the ultimate burden of persuasion." Taking into account "the specialized expertise of the staff of an administrative agency," we give great deference to SPC's decision to place the burden of proof on ESC. *High Rock Lake Assoc.*, 51 N.C. App. at 279, 276 S.E.2d at 475. However, in light of our Supreme Court's recent decision in *Soles v. City of Raleigh Civil Service Comm.*, 345 N.C. 443, 480 S.E.2d 685, we are compelled to find that placing the burden of proof in "just cause" claims on the employee does not pose a substantial threat of erroneous termination and therefore does not violate due process.

In *Soles*, petitioner was hired by the City of Raleigh on 5 April 1984 as an Engineering Aide I and was promoted to Engineering Aide II on 13 August 1986. *Id.* at 444, 480 S.E.2d at 686. Petitioner was terminated from his employment on 2 December 1990 for " 'personal conduct detrimental to City service.' " *Id.* at 445, 480 S.E.2d at 686.

Following an unsuccessful appeal to the City Manager, petitioner petitioned for an administrative hearing before the Raleigh Civil Service Commission alleging he had been " 'dismissed without justifiable cause.' " *Id.* The Commission concluded petitioner had failed to establish by the greater weight of the evidence that he had been terminated without justifiable cause. *Id.* Petitioner then sought judicial review alleging that the Commission's finding that he had " 'failed to establish by the greater weight of the evidence that he was terminated without justifiable cause' " violated his constitutional rights. *Id.* at 445-46, 480 S.E.2d at 686-87. The trial court reversed the Commission's decision on the grounds that allocating the burden of proof to petitioner violated his right to due process, and this Court unanimously affirmed. *Id.* at 446, 480 S.E.2d at 687.

On appeal, our Supreme Court held that petitioner possessed no constitutionally protected property interest in his continued employment with the City, and that placing the burden of proof on him to prove he was dismissed without just cause did not violate due process. *Id.* at 447-48, 480 S.E.2d at 688. The Court stated "while the placement of the burden of proof is rarely without consequence and frequently dispositive of the outcome of the litigation, '[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment.' " *Id.* at 449, 480 S.E.2d at 689 (quoting *Lavine v. Milne*, 424 U.S. 577, 585, 47 L. Ed. 2d 249, 256 (1976)). The Court also observed that a constitutional right to a certain allocation of the burden of proof exists only when a fundamental right is at issue. *Soles*, 345 N.C. at 449, 480 S.E.2d at 689. The Court then stated, "[w]here, as here, no fundamental right is at issue, the allocation of the burden of proof in civil cases is irrelevant to constitutional questions of procedural due process." *Id.* In conclusion, the Court cited *Arnett v. Kennedy*, 416 U.S. 134, 40 L. Ed. 2d 15, which held that due process did not require a pre-termination evidentiary hearing for a federal employee who could be terminated only for cause, for the proposition that "if it is permissible to dismiss an employee without any evidentiary hearing whatsoever, it is similarly permissible to discharge an employee after an evidentiary hearing in which the burden of proof is placed on the employee." *Soles*, 345 N.C. at 450, 480 S.E.2d at 689.

[6] While *Soles* involved a city employee with no constitutionally protected interest in continued employment, we are nevertheless guided by the *Soles* decision in determining where the burden of proof should fall in a "just cause" claim pursuant to N.C. Gen. Stat. § 126-35

involving a state employee with a constitutionally protected property interest in continued employment. While this issue was not directly before the Court in *Soles*, the Court made the statement that "[a]ssuming a situation existed in which an employee was entitled to procedural due process protection, we agree with the City and hold that the allocation of the burden of proof to a disciplined employee does not violate the employee's guarantees of procedural due process." *Soles*, 345 N.C. at 448, 480 S.E.2d at 688. Thus, based on *Soles*, we hold that the burden of proof in "just cause" claims pursuant to N.C. Gen. Stat. § 126-35 may be allocated to an employee without violating due process. The trial court therefore did not err by determining that SPC's decision and order improperly placed the burden of proof on ESC.

### III. Peace's Motion for Rule 11 Sanctions

Pro se plaintiff Peace asserts in his brief that Rule 11 sanctions should be imposed against the ESC attorneys. Peace claims that ESC frivolously submitted yet another appeal after losing on this retaliatory discharge claim below, and additionally for appealing two other cases between these two parties. Furthermore, Peace claims the attorneys filed an appeal for the mere purpose of delay and to increase Peace's legal fees. In light of our rulings, this claim for sanctions is dismissed.

### IV. Conclusion

In both appeals, the ALJ improperly placed the burden of proof on the employer. In *Gibson*, the North Carolina Supreme Court held that the burden of proof is on the employee in Title VII cases, including retaliatory discharge claims. *North Carolina Dept. of Correction v. Gibson*, 308 N.C. at 137, 301 S.E.2d at 87. Thus, the retaliatory discharge claim is reversed and remanded to the trial court for further remand to the ALJ for proceedings not inconsistent with this opinion. Furthermore, in light of the Supreme Court's decision in *Soles v. City of Raleigh Civil Service Commission*, 345 N.C. 443, 480 S.E.2d 685, Peace's "just cause" claim is remanded to the superior court for further remand for the application of the proper burden of proof. Finally, Peace's motion for sanctions is denied.

Reversed and remanded in No. 93 CVS 10599.

Remanded in No. 94 CVS 11517.

**EMPLOYMENT SECURITY COMM. v. PEACE**

[128 N.C. App. 1 (1997)]

Judge LEWIS concurs.

Judge GREENE dissents in part.

Judge GREENE dissenting in part.

I disagree with the majority's affirmance of the trial court's determination that the State Personnel Commission improperly placed the burden of proof on the Employment Security Commission of North Carolina, and would reverse the trial court on this issue.

First, I agree with the majority's well-reasoned explanation of why the burden of proof in a termination without just cause case is more fairly placed upon the employer. I add only that this Court has repeatedly acquiesced in the placement of the burden of proof on the employer in just cause cases. *See Davis v. N.C. Dept. of Human Resources*, 110 N.C. App. 730, 432 S.E.2d 132 (1993) (not addressing placement of the burden of proof on the employer); *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 504, 397 S.E.2d 350, 355 (1990) (affirming the trial court's conclusion that the employer "had not met *its* burden of showing just cause to uphold the terminations") (emphasis added), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991); *Employment Security Comm. v. Wells*, 50 N.C. App. 389, 391, 274 S.E.2d 256, 258 (1981) ("not reach[ing] the question of whether [the employer] failed to carry the necessary burden of proof to show just cause for petitioner's dismissal from its employ" because case remanded on other grounds).

I disagree with the majority's conclusion that *Soles v. City of Raleigh Civil Service Comm.*, 345 N.C. 443, 480 S.E.2d 685 (1997), mandates placement of the burden of proof on the employee in just cause cases. *Soles* merely stands for the proposition that, where a pre-existing rule mandates placement of the burden of proof on the employee, such placement does not violate the employee's due process rights. *Soles*, 345 N.C. at 448, 480 S.E.2d at 688. There is no pre-existing rule mandating placement of that burden on the employee in this case. *Soles* does not, either explicitly or implicitly, require courts to place the burden of proof on the employee in just cause cases.

Absent specific guidance from our Supreme Court or our General Assembly, I do not believe we should depart from our customary practice of placing the burden of proof on the employer in just cause cases.