STROUD, Judge.
 

 *256
 
 Plaintiff Winslow Forbes ("plaintiff") appeals from the trial court's order granting summary judgment for defendants City of Durham ("defendant City of Durham"), Jose L. Lopez, Sr. ("defendant Lopez"), and Thomas J. Bonfield ("defendant Bonfield") and dismissing all of his claims with prejudice. On appeal, plaintiff argues that he has demonstrated several genuine disputes of material facts and that the
 
 *257
 
 trial court should not have granted summary judgment on any of his retaliation claims. After review, we disagree and find the trial court did not err in granting summary judgment on all of plaintiff's claims.
 

 Background
 

 Plaintiff joined the City of Durham Police Department in 1988. He was promoted to Corporal around 1997, Sergeant around 1999, and Lieutenant around 2001. Defendant Lopez became Chief of Police in 2007. Defendant Lopez promoted plaintiff to Captain in 2009, and a little more than a year later, on 13 August 2010, he appointed him to Assistant Chief.
 

 Plaintiff was considered for a promotion to Deputy Chief on two occasions: first, in May 2012, when he and Assistant Chief Larry Smith were considered for an open Deputy Chief position. Defendant Lopez ultimately selected Assistant Chief Smith for the promotion. Plaintiff "believed that both he and [Assistant Chief] Smith were well-qualified candidates." Nevertheless, afterwards, plaintiff told defendant Lopez that "there were many black officers who were qualified for promotion, but Chief Lopez had consistently promoted non-black officers over equally or better-qualified black officers." Plaintiff also allegedly told defendant Lopez that "many black officers had a perception of discrimination[.]" Defendant Lopez "responded in a defensive and angry tone." Plaintiff alleged in his complaint that it appeared to him that defendant Lopez "was angry about the suggestion that even a
 
 perception
 
 of discrimination might exist."
 

 Plaintiff alleged that after this conversation, defendant Lopez did not take any action to address either actual or perceived racial discrimination and that he then began treating plaintiff differently than similarly-situated white colleagues. For example, plaintiff described a situation involving a black male Lieutenant under his command and a white male subordinate officer who received a coaching and counseling memo from the Lieutenant for violating a department policy and then complained to a white male Sergeant in Internal Affairs. The Lieutenant told plaintiff he had previously been treated unfairly by this Sergeant and he was concerned he would once again be treated unfairly during this investigation. Plaintiff requested another Internal Affairs officer be assigned to this investigation; afterwards, defendant Lopez decided plaintiff would not be allowed to review the investigative file, in contrast to the typical process where each individual in the chain of command above the person under investigation can review the file and determine whether or not they agree with Internal Affairs' conclusions. Plaintiff told defendant Lopez he felt he was being treated differently than white commanding officers in similar circumstances.
 

 *258
 
 In 2013, another Deputy Chief retired, leaving a position available. Plaintiff alleges that he was the only remaining candidate for promotion based on the Review Panel's assessments approximately six months earlier. Plaintiff alleges that "[t]he usual and customary practice of the Police Department has been to promote the next individual on the
 
 *162
 
 list of qualified applicants from the Review Panel, provided that the list is not more than eighteen months old." But on 18 February 2013, defendant Lopez informed plaintiff that he intended to conduct a new process for the open Deputy Chief position. "Plaintiff believes that [defendant] Lopez made this decision on the basis of race, and in retaliation for [p]laintiff's opposition to race discrimination within the Police Department."
 

 Plaintiff filed a complaint with Human Resources on 28 February 2013, alleging race discrimination and retaliation by defendant Lopez. Plaintiff applied for the open Deputy Chief position and was interviewed by the Review Panel in March 2013. Defendant Lopez informed plaintiff on 21 March 2013 that he had selected Assistant Chief Anthony Marsh-a black male-for the Deputy Chief position over plaintiff. Plaintiff alleged in part that Chief Lopez "failed to promote him to Deputy Chief in retaliation for his opposition to race discrimination by Chief Lopez."
 

 Plaintiff told defendant Lopez both via email and verbally that he believed the promotion process "had been unfair, discriminatory, and retaliatory." On 25 March 2013, defendant Lopez gave plaintiff a coaching and counseling memo in response to his claims of discriminatory and retaliatory practices. Plaintiff filed a supplemental complaint with Human Resources regarding the memo. Defendant City of Durham then hired a consultant to investigate plaintiff's allegations. Human Resources contacted plaintiff on 7 June 2013 and informed him that "the consultant found his allegations of race discrimination to be 'not substantiated' but had been 'unable to determine' whether retaliation had occurred."
 

 Plaintiff further alleged that on 2 July 2013, defendant Lopez made a "racially offense remark in the presence of his Executive Committee and several other City employees." Defendant Lopez was preparing for a press conference regarding recent shootings in Durham; he pointed out that all of the recent shooting victims were African-American and had been involved in criminal activity. He also stated that all known suspects were African-American. "Plaintiff felt that this remark was offensive because the race of the victims should not be relevant to law enforcement officials." An Assistant Chief pointed out that one of the shooting victims was a black lawyer who was an innocent bystander and not involved in any criminal activity; defendant Lopez responded by stating that "the lawyer deserved to get shot because he was a public defender."
 

 *259
 
 Plaintiff perceived this remark as racially motivated and highly offensive. On 16 July 2013, he met with defendant Bonfield, who was employed by the City of Durham as City Manager, and reported defendant Lopez's remark. Defendant Bonfield assured plaintiff he took the allegation seriously and that it would be investigated. Defendant Lopez held a press conference on 6 September 2013 and stated that he did not recall making the remark, but he could not be certain that he had not.
 

 Plaintiff filed his complaint on or about 29 July 2014. Plaintiff's complaint contained several causes of action for race discrimination and retaliation, including: (1) under Title VII against defendant City of Durham; (2) under
 
 42 U.S.C. § 1981
 
 against defendant City of Durham and defendants Lopez and Bonfield in both their official and individual capacities; (3) under
 
 42 U.S.C. § 1983
 
 against defendant City of Durham and defendants Lopez and Bonfield in both their official and individual capacities; and (4) under the North Carolina Constitution against defendant City of Durham and defendants Lopez and Bonfield in their official capacities.
 

 Defendants City of Durham and Bonfield jointly filed an answer, and defendant Lopez filed a motion to dismiss and answer of his own. On or about 29 May 2015, defendants filed a motion for summary judgment "as to all claims against them in this matter." The motion included an affidavit from defendant Lopez, and defendants argued:
 

 The pleadings in this matter, the attachments thereto, the deposition testimony, the discovery responses in this matter, and the affidavit [of defendant Lopez] ... demonstrate the absence of a genuine issue of material fact and that [d]efendants are entitled to judgment as a matter of law dismissing all claims against them.
 

 *163
 
 The trial court held a hearing on the motion on 14 June 2016 and entered an order on or about 11 July 2016 granting defendants' motion for summary judgment and dismissing plaintiff's claims with prejudice. Plaintiff timely appealed to this Court.
 

 Discussion
 

 I. Standard of Review
 

 On appeal from summary judgment, the applicable standard of review is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the
 
 *260
 
 affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. If there is any evidence of a genuine issue of material fact, a motion for summary judgment should be denied. We review the record in a light most favorable to the party against whom the order has been entered to determine whether there exists a genuine issue as to any material fact.
 

 Smith v. Harris
 
 ,
 
 181 N.C.App. 585
 
 , 587,
 
 640 S.E.2d 436
 
 , 438 (2007) (citations, quotation marks, and brackets omitted).
 

 Plaintiff argues that he has demonstrated genuine issues of material fact in relation to the pre-textual nature of defendants' justifications for the adverse actions at issue. We will address these issues in relation to each of the underlying claims for which plaintiff has raised arguments on appeal.
 

 II. Retaliation claim under Title VII
 

 Plaintiff first argues that the trial court erred in dismissing his retaliation claim under Title VII against defendant City of Durham.
 
 [1]
 
 Under Title VII:
 

 It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
 

 42 U.S.C.A. § 2000e-3(a).
 

 *261
 
 This Court has previously set forth the burden of proof in a claim for retaliation under Title VII:
 

 A. Burden of Proof in Title VII Cases
 

 According to the North Carolina Supreme Court, the claimant carries the initial burden of proof in Title VII cases. In addition, a prima facie showing of retaliatory discharge requires a plaintiff to show: (1) he engaged in some protected activity, such as filing an EEO complaint; (2) the employer took adverse employment action against plaintiff; and (3) that the protected conduct was a substantial or motivating factor in the adverse action (a causal connection existed between the protected activity and the adverse action). Petitioner must prove "but for" causation instead of "motivating factor" in his prima facie case of retaliatory acts in violation of Title VII.
 

 After plaintiff presents a prima facie case of retaliation, the burden shifts to the defendant to show it would have taken the same action even in the absence of protected conduct. Defendant must articulate a legitimate nondiscriminatory reason for its action. A legitimate reason overcomes the presumption of discrimination from plaintiff's prima facie showing if it has a rational connection with the business goal of securing a competent and trustworthy work force.
 

 *164
 
 If defendant shows a legitimate reason that overcomes the presumption, plaintiff then has to show that the reason was only a pretext for the retaliatory action. Therefore, a plaintiff retains the ultimate burden of proving that the adverse employment action would not have occurred had there been no protected activity engaged in by the plaintiff.
 

 Employment Sec. Comm'n v. Peace
 
 ,
 
 128 N.C.App. 1
 
 , 9-10,
 
 493 S.E.2d 466
 
 , 471-72 (1997) (citations, quotation marks, and brackets omitted),
 
 aff'd in part, disc. review improvidently allowed in part, and dismissed in part
 
 ,
 
 349 N.C. 315
 
 ,
 
 507 S.E.2d 272
 
 (1998).
 
 See also
 

 University of Texas Southwestern Med. Cntr. v. Nassar
 
 ,
 
 570 U.S. 338
 
 ,
 
 133 S.Ct. 2517
 
 , 2533,
 
 186 L.Ed.2d 503
 
 , 523 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that
 
 *262
 
 the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").
 

 In this case, plaintiff contends that the following constitute protected activities and meet the first element: the various occasions when plaintiff verbally raised concerns to defendant Lopez regarding perceived racial discrimination against African-American officers, including during the first week defendant Lopez became Chief of Police; the series of written complaints regarding discrimination and retaliation that plaintiff filed with Human Resources beginning in February 2013; the filing of an EEOC charge in August 2013; and the filing of plaintiff's complaint in this underlying matter in July 2014. Plaintiff argues that the adverse action was defendant Lopez's decision to have a new Review Panel process, instead of using the list generated by the prior Review Panel, and his promotion of Assistant Chief Marsh over plaintiff in March 2013. Accordingly, plaintiff argues that there are "at least material issues of fact that must go to the jury regarding whether the decision to not promote [plaintiff] constitutes retaliation." And plaintiff notes our prior case law holding that when the state of mind of the defendant is at issue, summary judgment is rarely proper.
 
 See, e.g.,
 

 Valdese Gen. Hosp., Inc. v. Burns
 
 ,
 
 79 N.C.App. 163
 
 , 165,
 
 339 S.E.2d 23
 
 , 25 (1986) ("Summary judgment is rarely proper when a state of mind such as intent or knowledge is at issue.");
 
 see also
 

 Robertson v. Hartman
 
 ,
 
 90 N.C.App. 250
 
 , 253,
 
 368 S.E.2d 199
 
 , 201 (1988) ("This Court has held that where there is a need to 'find facts' then summary judgment is not an appropriate device to employ, provided those facts are material." (Citation omitted)).
 

 But before we even get to this portion of plaintiff's argument, we have to look at the bigger picture. Plaintiff is appealing from the trial court's order that granted defendants' motion for summary judgment and dismissed all of plaintiff's claims. In doing so, the trial court concluded that "there is no genuine issue of material fact" and that defendants were "entitled to judgment as a matter of law." The trial court dismissed plaintiff's claims for discrimination, and plaintiff has not challenged the trial court's ruling on these claims on appeal. Plaintiff only appeals the trial court's dismissal of his retaliation claims.
 

 We agree with the trial court that there are not any genuine issues of material fact in this case. All parties seem to generally be on the same page regarding the events leading up to defendant Lopez's hiring decision when he selected Assistant Chief Marsh-also a black male-over plaintiff. The issue is whether that decision was motivated by a retaliatory basis. To determine that, we must apply the framework above.
 

 *263
 
 Even assuming that plaintiff correctly identified protected activities and an adverse action on the part of defendant Lopez, as required for the first and second elements, plaintiff struggles to demonstrate a causal connection between the activities and the adverse action at issue. Many of the activities plaintiff mentions took place after defendant Lopez decided to have a new Review Panel and the hiring decision had been made. Defendant Lopez informed plaintiff that he intended to conduct a new process for the open Deputy Chief position on 18 February 2013 and informed plaintiff that he had selected Assistant Chief Marsh for the Deputy Chief position on 21 March 2013. Plaintiff's EEOC
 

 *165
 
 complaint and his underlying complaint in this matter were not filed until August 2013 and July 2014 respectively. Plaintiff cannot show how his filing of the EEOC complaints months later could have impacted defendant Lopez's hiring decision which had already been made. As for the series of written complaints plaintiff filed with Human Resources beginning in February 2013, defendant Lopez explained in his affidavit that he was not informed of the fact that plaintiff had filed anything with Human Resources until 27 March 2013, 37 days after he had announced the new Review Panel process and six days after he notified plaintiff that he had chosen Marsh for the position.
 

 The only remaining protected activities that could have been tied to the hiring decision were the "multiple occasions [plaintiff] verbally raised with [defendant] Lopez what he and other African-American officers perceived to be racial discrimination on [defendant] Lopez's part." Plaintiff notes that such comments were even made during the first week defendant Lopez was employed as Chief, which would have occurred back in 2007-before defendant Lopez promoted plaintiff to Captain in 2009 and before defendant Lopez promoted him to Assistant Chief in 2010. Plaintiff has not, however, shown any direct link between his comments to defendant Lopez years and months prior to when defendant Lopez decided on how the promotion decision would be made and his decision to hire Assistant Chief Marsh rather than plaintiff for the Deputy Chief position. Any such connection must be more than mere speculation.
 
 See, e.g.
 
 ,
 
 Brooks v. Stroh Brewery Co.
 
 ,
 
 95 N.C.App. 226
 
 , 237,
 
 382 S.E.2d 874
 
 , 882 (1989) ("The direct causal connection between the protected activity and termination present in each of these cases is not evident in the case presently before the Court. This Court is not unmindful that circumstantial evidence is often the only evidence available to show retaliation against protected activity. Nevertheless, the causal connection must be something more than speculation; otherwise, the complaining employee is clothed with immunity for future misconduct and is 'better off' for having filed the complaint rather than
 
 *264
 
 being no 'worse off.' " (Citations omitted)). Plaintiff failed to forecast sufficient evidence connecting his prior comments to defendant Lopez to the ultimate decision made to promote Assistant Chief Marsh.
 

 Furthermore, even assuming that plaintiff can demonstrate that his verbal complaints of discrimination to defendant Lopez were connected to defendant Lopez's alleged adverse action of instituting a new Review Panel and not hiring him for the Deputy Chief position, defendant Lopez can demonstrate a non-retaliatory reason for the alleged adverse action, as Assistant Chief Marsh was also qualified for the Deputy Chief position. Defendant Lopez explained in his affidavit that since he had become Chief of Police, it had been his practice when filling open positions to use a promotion committee to consider and rate the candidates and then make the ultimate decision himself. He stated that he did not like to rely too much on seniority when making decisions, and that at the time he was deciding between plaintiff and Assistant Chief Marsh, the assessment panel rated both candidates as above average, but Marsh was rated slightly higher. The panel spoke highly of both candidates, but "were more complimentary of Marsh." While plaintiff has raised issue with some of defendant Lopez's alleged specific justifications for why he felt Marsh was better qualified than plaintiff-including a claim that it "had to do with the day-to-day manner in which Chief Marsh presented himself and the work product he produced"-plaintiff has not challenged the Review Panel's evaluation of Assistant Chief Marsh's qualifications as "above average" or that his rating was a bit higher than plaintiff's. Nor has plaintiff even alleged that the Review Panel itself made its evaluations improperly or with any sort of retaliatory motivation. Thus, since defendants have articulated "a legitimate nondiscriminatory reason" for the promotion of Marsh instead of plaintiff which "has a rational connection with the business goal of securing a competent and trustworthy work force," they have "overcome[ ] the presumption of discrimination from plaintiff's prima facie showing[.]"
 
 Peace
 
 ,
 
 128 N.C.App. at 10
 
 ,
 
 493 S.E.2d at 472
 
 (citations and quotation marks omitted).
 

 *166
 
 As noted above, plaintiff claims that even the decision to have a new Review Panel to evaluate candidates was retaliatory, in addition to the hiring decision itself. Plaintiff claims "[t]he usual and customary practice of the Police Department has been to promote the next individual on the list of qualified applicants from the Review Panel, provided that the list is not more than eighteen months old." Plaintiff also alleged in his complaint that this customary practice for handling promotions was part of a written policy created by defendant Lopez, yet also noted that while "[p]ursuant to said policy, a promotion list expires after eighteen
 
 *265
 
 months, ... it may be extended for a longer period of time by Defendant Lopez at his discretion." Thus, although this may have been a customary practice in the past, plaintiff has not presented any evidence that this practice was required by any official rules or policies adopted by the Police Department, or that defendant Lopez did not have full discretion to revise the policy-which plaintiff acknowledges was created by defendant Lopez from the outset. Defendant Lopez has presented a "legitimate nondiscriminatory reason" for the use of the new Review Panel to evaluate candidates, and plaintiff does not suggest any sort of impropriety by the Review Panel.
 
 Id
 
 .
 

 Since defendants have shown "a legitimate reason that overcomes the presumption, plaintiff then has to show that the reason was only a pretext for the retaliatory action. Therefore, a plaintiff retains the ultimate burden of proving that the adverse employment action would not have occurred had there been no protected activity engaged in by the plaintiff."
 
 Id
 
 . (citations, quotation marks, and brackets omitted). Plaintiff argues that the "justifications" given by defendant Lopez for his decision to promote Assistant Chief Marsh rather than plaintiff "are just not believable." We disagree. As noted above, Marsh's qualifications and the panel's evaluation of Assistant Chief Marsh and plaintiff are undisputed. Plaintiff can claim only that despite Assistant Chief Marsh's qualifications and the Review Panel's independent process of evaluating both plaintiff and Marsh, we should simply not "believe" that Lopez's hiring decision was not motivated by retaliation. Despite thousands of pages of deposition testimony and discovery, plaintiff cannot point to any evidence which shows that Lopez's decision "would not have occurred had there been no protected activity engaged in by the plaintiff."
 
 Id
 
 . (citation and quotation marks omitted). Plaintiff's forecast of evidence does not show any material factual dispute that would support a conclusion that the hiring decision would not have occurred "but for" retaliation.
 
 See
 

 id
 
 . at 9,
 
 493 S.E.2d at 472
 
 .
 

 III.
 
 42 U.S.C. §§ 1981
 
 and 1983 Retaliation Claims
 

 Next, plaintiff argues that the trial court should not have dismissed his retaliation claims against defendant City of Durham and defendants Lopez and Bonfield in their individual and official capacities under
 
 42 U.S.C. §§ 1981
 
 and 1983 because he asserted valid claims that should have been allowed to proceed to trial. Plaintiff notes in his brief that he "will accept for purposes of the summary judgment motion, that the Section 1981 and 1983 claims are merged[.]" Plaintiff notes further that while "[o]n its face, Section 1981 relates to racial discrimination in the making and enforcement of contracts.... it has been held to provide
 
 *266
 
 a remedy against racial discrimination in employment." Additionally, plaintiff argues that "[e]ven though the language of Section 1981 does not expressly state that a claim for retaliation is covered, the Supreme Court has made clear that it is an integral part of preventing racial discrimination," and thus "a retaliation claim for reporting acts of discrimination can be brought under Section 1981."
 
 See
 

 CBOCS West, Inc. v. Humphries
 
 ,
 
 553 U.S. 442
 
 , 445,
 
 128 S.Ct. 1951
 
 , 1954,
 
 170 L.Ed.2d 864
 
 , 869 (2008) ("The basic question before us is whether the provision [of
 
 42 U.S.C. § 1981
 
 (a) ] encompasses a complaint of retaliation against a person who has complained about a violation of another person's contract-related 'right.' We conclude that it does.").
 

 a.
 
 Defendant City of Durham
 

 In order to succeed in a Section 1983 claim against defendant City of Durham,
 
 *167
 
 plaintiff would have to produce evidence of the City's direct culpability and causation; defendant Lopez's alleged discriminatory intent cannot be imputed to defendant City of Durham.
 
 See, e.g.,
 

 May v. City of Durham
 
 ,
 
 136 N.C.App. 578
 
 , 584,
 
 525 S.E.2d 223
 
 , 229 (2000) ("[T]o make out a claim against a municipality directly, a plaintiff must do more than establish liability through respondeat superior, but must show that the 'official policy' of the municipal entity is the moving force of the constitutional violation." (Citation and quotation marks omitted)). Plaintiff does not meet this burden. Plaintiff has not directed this Court to any specific policy statement, ordinance, regulation, or other official policy of defendant City of Durham that caused or encouraged the alleged retaliation. Accordingly, we hold that the trial court did not err in granting summary judgment on plaintiff's claims against defendant City of Durham.
 

 b.
 
 Defendant Bonfield
 

 Similarly, we hold that the trial court also did not err in dismissing plaintiff's Section 1981 and 1983 claims against defendant Bonfield in both his individual and official capacity. Plaintiff makes no specific arguments on appeal in relation to any of the defendants, and as to defendant Bonfield in particular any alleged retaliation was too far removed to be imputed in any way to him.
 

 Plaintiff's only allegation related to defendant Bonfield in the complaint relates to his reaction to defendant Lopez's comment in July 2013, four months after the promotion decision occurred. Plaintiff met with defendant Bonfield on 16 July 2013 to report defendant Lopez's remark and defendant Bonfield "assured Plaintiff that he took such allegations seriously and would investigate the matter." Even assuming
 
 *267
 
 the facts to be true-and no one seems to dispute that this conversation occurred on that date-these allegations and the forecasted evidence do not support any sort of Section 1981 or 1983 claim against defendant Bonfield for involvement in defendant Lopez's promotion decision that was made months before the conversation.
 

 Plaintiff notes that defendant Bonfield "has authority to establish and implement policies and procedures for investigation and action with regard to complaints of unlawful employment actions toward City employees." He also claims that defendant Bonfield had "ultimate authority to override decisions made by Defendant Lopez, when such decisions are made for unlawful discriminatory or retaliatory reasons." But as discussed above, plaintiff has failed to forecast sufficient evidence to support his claim against defendant Lopez himself, so there is no showing of a need to override Lopez's decision. At most, plaintiff's evidence shows generally how defendant Bonfield would have been informed of complaints regarding defendant Lopez, but asserts nothing actionable by defendant Bonfield that could uphold a claim against him in this matter. We therefore find the trial court did not err in granting summary judgment on plaintiff's Section 1981 and 1983 claims against defendant Bonfield both in his individual and official capacity.
 

 c.
 
 Defendant Lopez
 

 Finally, plaintiff argues that the trial court should not have dismissed his Section 1981 and 1983 claims against defendant Lopez, both in his individual and official capacities. Our analysis here ultimately mirrors that which we have explained above in relation to plaintiff's Title VII claims.
 
 See, e.g.,
 

 Brewer v. Cabarrus Plastics, Inc.
 
 ,
 
 130 N.C.App. 681
 
 , 686,
 
 504 S.E.2d 580
 
 , 584 (1998) ("The models and standards developed in jurisprudence under Title VII of the Civil Rights Act of 1964 ... also apply to claims under § 1981." (Citation omitted)). Plaintiff's claim cannot survive summary judgment because he both lacks sufficient evidence of a connection between his engagement in protected actions and defendant Lopez's decision to hire Assistant Chief Marsh over him-the alleged adverse employment action-and because defendant Lopez has given a legitimate, nondiscriminatory reason for his promotion decision that plaintiff cannot overcome or show is simply a pretext for discrimination.
 

 *168
 
 IV. North Carolina Constitutional Retaliation Claim
 

 Finally, plaintiff argues that his retaliation claims under Article I, Section 19 of the North Carolina Constitution against defendant City of Durham and defendants Lopez and Bonfield in their official capacities should not have been dismissed.
 

 *268
 
 Article I, Section 19 states:
 

 No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.
 

 Plaintiff argues that this Court should apply the "same logic and rationale" that makes racial discrimination by a public entity illegal to the need to prevent retaliation, and thus "there is surely a claim for retaliation available under Article I, Section 19 of the Declaration of Rights [of the North Carolina Constitution.]" Plaintiff, however, fails to provide any further support for this claim, and we conclude that it fails for the reasons we have already stated above in relation to his Title VII and Section 1983 claims. Accordingly, we hold the trial court did not err in dismissing these claims.
 

 Conclusion
 

 In sum, we conclude that plaintiff has failed to demonstrate any genuine issues of material fact and that defendants are entitled to judgment as a matter of law as to all of plaintiff's retaliation claims. We hold that the trial court properly granted summary judgment in defendants' favor on all claims.
 

 AFFIRMED.
 

 Judge DILLON concurs
 

 Judge MURPHY concurs in the result only.
 

 [1]
 

 Plaintiff has not raised any issues on appeal in relation to the discrimination component of any of his claims; his appeal solely focuses on the retaliation component. Unfortunately, defendants' brief only addresses the discrimination component of this first claim, so it is entirely unhelpful with this first issue.