JOHN M. SOLES, Petitioner-Appellee v. THE CITY OF RALEIGH CIVIL SERVICE COMMISSION, Respondent and THE CITY OF RALEIGH, Intervenor-Appellant

No. 280PA95

(Filed 10 February 1997)

1. Constitutional Law § 105 (NCI4th)— occupation—due process protection—property interest

Whether an individual has a constitutional right to due process protection with respect to an occupation depends on whether that individual possesses a property interest or right in continued employment.

Am Jur 2d, Constitutional Law §§ 580, 583, 584, 812, 813.

2. Municipal Corporations § 378 (NCI4th)— city employee— continued employment—no protected property interest— procedural due process not required

A city employee did not have a constitutionally protected property interest in continued employment by the city because personnel policies enacted by the city establish that "just cause" must be shown before a city employee may be discharged, and the employee was thus not entitled to procedural due process, where the city's personnel policies were not incorporated into the employee's contract of employment, and the city's charter specifically vested in the city manager the absolute discretion to fire employees.

Am Jur 2d, Constitutional Law §§ 580, 583, 584, 592, 593.

Termination of public employment: right to hearing under due process clause of Fifth or Fourteenth Amendment—Supreme Court cases. 48 L. Ed. 2d 996.

3. Municipal Corporations § 380 (NCI4th)— dismissal of city employee—absence of just cause—burden on employee— no due process violation

Assuming the existence of a situation in which a city employee was entitled to due process protection, a Civil Service Commission rule placing the burden on the employee to show by a preponderance or greater weight of the evidence that he was

terminated without just cause did not violate the employee's procedural due process rights.

**Am Jur 2d, Administrative Law §§ 360, 351; Constitutional Law §§ 814, 815.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 119 N.C. App. 88, 457 S.E.2d 746 (1995), affirming judgment holding unconstitutional a provision in Raleigh Civil Service Act Rule .0504 entered by Allen (W. Steven, Sr.), J., at the 6 July 1992 Civil Session of Superior Court, Wake County. Heard in the Supreme Court 13 February 1996.

*Law Offices of Jack B. Crawley, Jr., by Jack B. Crawley, Jr., for petitioner-appellee.*

*Thomas A. McCormick, City Attorney, by Dorothy K. Woodward, Associate City Attorney, for intervenor-appellant.*

*Edelstein and Payne, by M. Travis Payne; and Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, by John W. Gresham, on behalf of North Carolina Civil Liberties Union Legal Foundation, Raleigh Professional Fire Fighters Association, and North Carolina Association of Educators, amici curiae.*

LAKE, Justice.

The petitioner, John Soles, was hired by the City of Raleigh ("the City") on 5 April 1984 as an Engineering Aide I, a position Soles held until 13 August 1986, when the City promoted him to Engineering Aide II. On 2 November 1990, Soles traveled to a work site in a City-owned carryall truck with his supervisor, Junious Nichols, and a co-worker, David Smith. When they arrived at the work site, Nichols left the vehicle. Soles and Smith stayed in the truck. Shortly thereafter, Smith smelled a strong marijuana odor coming from the back of the truck. Smith turned around and saw Soles smoking from a red and silver pipe. Soles had his head ducked down so that he could not be seen from the street. The incident was reported to Nichols, who in turn reported the incident to his supervisor and the City Engineer, Jimmie Beckom.

An internal investigation corroborated Smith's accusations. During the course of that investigation, Detective Ken Mathias, an officer with the Raleigh Police Department's Vice and Narcotics Division, and his dog, Peddy, examined all of the Transportation

Department's carryall trucks. Peddy was trained to detect the presence of controlled substances. Without being directed to the truck involved in the incident, Peddy signaled that marijuana had been present in the vehicle used by Soles, Nichols and Smith on 2 November 1990.

On 2 December 1990, after completing its internal investigation, the City terminated Soles' employment for "personal conduct detrimental to City service" pursuant to City of Raleigh Standard Procedure 300-14, Rev. B, Section 4.2(k). Following written notification of his termination, Soles appealed unsuccessfully to the City Manager. Soles thereafter petitioned for an administrative hearing with the Raleigh Civil Service Commission ("the Commission") alleging that he had been "dismissed without justifiable cause." A hearing on Soles' petition was held on 17 July 1991 and 31 July 1991, and evidence was presented by both parties. On 19 September 1991, the Commission affirmed Soles' dismissal. The Commission's final decision included the following pertinent findings of fact and conclusions of law:

> 27. Mr. Soles was terminated on December 2, 1990, in accordance with City of Raleigh Standard Procedure 300-14, Rev. B, Sec. 4.2(k).
>
> . . . .

## CONCLUSIONS OF LAW

> . . . .
>
> *The petitioner failed to establish by the greater weight of the evidence that he was terminated without justifiable cause.*
>
> The City of Raleigh adequately complied with its policies, procedures, and regulations regarding drug use by City employees and in the terminating of the employee in this case.
>
> There was good cause sufficient to warrant the employees' [sic] termination from employment.

(Emphasis added.) On 11 October 1991, having exhausted all of his administrative remedies, Soles appealed the Commission's final decision by filing a petition for judicial review with the Wake County Superior Court. Soles alleged, *inter alia*, that the Commission's conclusion that he had "failed to establish by the greater weight of the evidence that he was terminated without justifiable cause" (based

SOLES v. CITY OF RALEIGH CIVIL SERVICE COMM.

[345 N.C. 443 (1997)]

upon the Commission's application of the burden of proof set forth in Rule .0504 of the Rules of the Raleigh Civil Service Commission) violated his constitutional rights. On 21 December 1992, the superior court reversed the Commission's decision on the grounds that the burden of proof set forth in Rule .0504 violated Soles' constitutional right to procedural due process. The City appealed, and on 6 June 1995, the Court of Appeals unanimously affirmed the superior court's decision.

The City now argues that the Court of Appeals erred in affirming the decision of the superior court in two respects: (1) by holding that Soles had a property right in continued employment with the City, thereby entitling him to procedural due process protection; and (2) by holding that Rule .0504 of the Rules of the Raleigh Civil Service Commission violated Soles' procedural due process rights.

[1], [2] The City first argues that the Court of Appeals erred by concluding that Soles was entitled to procedural due process protection. Whether an individual has a constitutional right to due process protection with respect to an occupation depends on whether that individual possesses a property interest or right in continued employment. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 84 L. Ed. 2d 494, 501 (1985). Soles contends, and the Court of Appeals agreed, that because the personnel policies enacted by the City establish that "just cause" must be shown before a City employee may be discharged, Soles indeed had a constitutionally protected property interest in his continued employment. In reaching this conclusion, the Court of Appeals noted that the city provision was similar to the "just cause" provision contained in the State Personnel Act, N.C.G.S. § 126-35, and that "our courts have previously established" that N.C.G.S. § 126-35 creates a property interest in continued employment. *Soles*, 119 N.C. App. at 91, 457 S.E.2d at 749. We disagree.

"North Carolina courts have repeatedly held that absent some form of contractual agreement between an employer and [an] employee establishing a *definite* period of employment, the employment is presumed to be an 'at-will' employment, terminable at the will of either party, irrespective of the quality of performance by the other party." *Harris v. Duke Power Co.*, 319 N.C. 627, 629, 356 S.E.2d 357, 359 (1987). In *Harris*, this Court clearly established that an employer's personnel manual or policies are not part of an employee's contract of employment unless expressly included in that

contract. *Id.* at 630, 356 S.E.2d at 359. We find no evidence that the City's personnel policies were in any manner incorporated into the petitioner's contract.

Contrary to the holding below, the City's personnel policies do not compare to the rights given State employees pursuant to N.C.G.S. § 126-35. Section 126-35 states in pertinent part:

No career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause.

N.C.G.S. § 126-35 (1995). The State Personnel Act is, by statute, a part of each qualifying state employee's contract. The City's personnel policy, on the other hand, is not a state statute or city ordinance passed into law. Unlike such a legislative mandate, the City's personnel policy was "designed so as not to restrict operating personnel but to help them solve problems . . . in a fair and equitable manner." City of Raleigh Standard Procedure 300-14, § 1.2 (1984). Thus, by its very terms, the City's personnel policy is not intended to restrict management options.

It is also important to note that municipal corporations are agencies of the State and have no power except that which is granted by the legislature. *Town of Emerald Isle v. North Carolina*, 320 N.C. 640, 656, 360 S.E.2d 756, 766 (1987). The City of Raleigh's charter specifically vests in the City Manager the absolute discretion to fire employees. Act of Apr. 23, 1949, ch. 1184, sec. 26, 1949 N.C. Sess. Laws 1442, 1464. The charter is a legislative enactment which only the legislature can amend. The City's personnel policies were written by the City's Personnel Director and approved by the City Manager. These policies are not contained in the City's Code of Ordinances. No internal operating procedure can divest the City Manager of the discretion granted by the legislature. Absent a legislative adoption, the City's policies serve merely as managerial guidelines which, standing alone, impart no rights to any employee. Accordingly, we hold that petitioner Soles possessed no constitutionally protected property interest in his continued employment with the City.

While unnecessary based on our holding above, we also elect, because of its importance, to discuss the City's second assignment of error.

[3] In its second assignment of error, the City contends that the Court of Appeals erred in its application of procedural due process to

the facts of this case. Specifically, the City argues that the Court of Appeals erred by holding that Raleigh Civil Service Commission Rule .0504 violated Soles' procedural due process rights. Pursuant to Rule .0504 of the Rules of the Raleigh Civil Service Commission, a terminated employee has the burden of establishing by the greater weight of the evidence that the action taken against him was unjustified. Assuming a situation existed in which an employee was entitled to procedural due process protection, we agree with the City and hold that the allocation of the burden of proof to a disciplined employee does not violate the employee's guarantees of procedural due process.

In order to determine what "process" is "due," the United States Supreme Court, in *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18 (1976), set forth a balancing test. The Court in *Mathews* described due process as a flexible process that "calls for such procedural protections as the particular situation demands," *id.* at 335, 47 L. Ed. 2d at 33, and set out three factors to consider in determining what process is due in a given situation:

> first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

The Supreme Court has stated that retaining employment is an important private interest. *Loudermill*, 470 U.S. at 543, 84 L. Ed. 2d at 504. The Court of Appeals is correct in stating that "[s]ubstantial weight must therefore be accorded [the employee's] interest in retaining the employment in which he possessed a constitutionally protected property right." *Soles*, 119 N.C. App. at 96, 457 S.E.2d at 751. However, the employee's interest in retaining employment is not absolute and must be tempered by public interest. *See Arnett v. Kennedy*, 416 U.S. 134, 40 L. Ed. 2d 15 (1974).

Turning to the second factor outlined in *Mathews*, we must determine whether Rule .0504, placing the burden of proof on an employee to show by the preponderance or greater weight of the evidence that he was terminated without cause, created a substantial risk that the

employee would be terminated in error. The Court of Appeals determined that the risk of error would "indisputably be minimized if the appropriate 'substitute procedural safeguard' was employed in circumstances such as these—i.e., the City was required to carry the burden of proving its employee was terminated based upon cause." *Soles*, 119 N.C. App. at 96, 457 S.E.2d at 752. We disagree.

In *Addington v. Texas*, 441 U.S. 418, 60 L. Ed. 2d 323 (1979), the Supreme Court analyzed different burdens of proof. According to the Court, the "preponderance of the evidence" standard is a roughly equal allocation of the risk of error between litigants. *Id.* at 423, 60 L. Ed. 2d at 329. Moreover, the Court of Appeals ignored many of the procedural safeguards embodied in the Civil Service Act. Employees have the right to be represented by counsel and recover attorneys' fees if they prevail and to conduct discovery, present evidence, subpoena witnesses, and cross-examine opposing witnesses at an evidentiary hearing before the Commission.

Furthermore, the Supreme Court, in *Lavine v. Milne*, 424 U.S. 577, 47 L. Ed. 2d 249 (1976), stated that while the placement of the burden of proof is rarely without consequence and frequently dispositive of the outcome of the litigation, "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment." 424 U.S. at 585, 47 L. Ed. 2d at 256. Only when a fundamental right has been at issue has the Court found a constitutional right to a certain allocation of proof. *See Santosky v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599 (1982) (fundamental right of family integrity required clear and convincing evidence to support a decision terminating parental rights); *Addington v. Texas*, 441 U.S. 418, 60 L. Ed. 2d 323 (fundamental right to physical liberty required clear and convincing evidence before involuntary commitment to a state mental facility); *Speiser v. Randall*, 357 U.S. 513, 2 L. Ed. 2d 1460 (1958) (fundamental right to freedom of speech requires burden of proof to fall on government). Continued public employment is not a fundamental right guaranteed by the United States Constitution. *Dunn v. Town of Emerald Isle*, 722 F. Supp. 1309, 1312 (E.D.N.C. 1989), *aff'd*, 918 F.2d 955 (4th Cir. 1990). Where, as here, no fundamental right is at issue, the allocation of the burden of proof in civil cases is irrelevant to constitutional questions of procedural due process.

Finally, the third factor set out in *Mathews* tips the balance in favor of the City. In *Arnett v. Kennedy*, the Court held that due

process did not demand a pre-termination evidentiary hearing for a federal employee who could be terminated only for cause. Justice Powell, in a concurring opinion, agreed with this result but reached it by applying the balancing test he later set forth in *Mathews*. Justice Powell explained:

> [T]he Government's interest, and hence the public's interest, is the maintenance of employee efficiency and discipline. Such factors are essential if the Government is to perform its responsibilities effectively and economically. To this end, the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the [workplace], foster disharmony, and ultimately impair the efficiency of an office or agency. Moreover, a requirement of a prior evidentiary hearing would impose additional administrative costs, create delay, and deter warranted discharges. Thus, the Government's interest in being able to act expeditiously to remove an unsatisfactory employee is substantial.

*Arnett*, 416 U.S. at 168, 40 L. Ed. 2d at 41 (Powell, J., concurring). Clearly, if it is permissible to dismiss an employee without any evidentiary hearing whatsoever, it is similarly permissible to discharge an employee after an evidentiary hearing in which the burden of proof is placed on the employee.

While significant weight must be given a city employee's private interest in retaining employment, that interest is not so great as to convince this Court that Rule .0504 is constitutionally infirm. Rule .0504 places a very lenient standard on the disciplined employee. The risk of an erroneous deprivation is small, and the government interest involved is substantial.

For the reasons stated herein, we reverse the decision of the Court of Appeals and remand this case to that court for further remand to the Superior Court, Wake County, for entry of judgment consistent with this decision.

REVERSED AND REMANDED.