WILLIAM H. PEACE, III, Petitioner v. EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, Respondent

WILLIAM H. PEACE, III, Petitioner v. EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, Respondent

No. 599A97

(Filed 4 December 1998)

**1. Labor and Employment § 68 (NCI4th)— property interest in continued employment**

Under North Carolina law, an employee has a protected "property" interest in continued employment only if the employee can show a legitimate claim to continued employment under a contract, a state statute, or a local ordinance.

**2. Public Officers and Employees § 66 (NCI4th)— State employee—just cause protection—property interest**

Petitioner, as a career State employee, is entitled to the "just cause" protection of the State Personnel Act and is thereby

imbued with a constitutionally protected "property" interest in continued employment. N.C.G.S. § 126-35.

**3. Public Officers and Employees § 66 (NCI4th)— State employee—dismissal for just cause—burden of proof on employee—due process**

The allocation of the burden of proof to a career State employee in an action contesting the validity of a "just cause" termination pursuant to N.C.G.S. § 126-35 does not violate procedural due process under the Fourteenth Amendment to the United States Constitution. Under the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, the individual "property" interest sought to be protected by the employee, while important and significant, is decisively outweighed by the substantial government interest in maintaining a productive and efficient work force, and there is a very minimal risk of erroneous decision making when the existing administrative and judicial review protections are utilized. U.S. Const. amend. XIV.

**4. Public Officers and Employees § 66 (NCI4th)— State employee—dismissal for just cause—burden of proof on employee—N.C. law**

A career State employee terminated pursuant to the "just cause" provision of N.C.G.S. § 126-35 should bear the burden of proof under North Carolina law in an action contesting the validity of that termination since the employee is the party attempting to alter the status quo; and neither party in a "just cause" termination dispute has peculiar knowledge not available to the opposing party because the employee may utilize available statutory and administrative procedures to obtain all necessary information to establish and advocate his or her position.

Justice FRYE concurring in part and dissenting in part.

Justice WHICHARD joins in this concurring and dissenting opinion.

Justice WYNN did not participate in the consideration or decision of this case.

Appeal by petitioner pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 128 N.C. App. 1, 493 S.E.2d 466 (1997), remanding an order entered by Bowen, J., on 13 March 1995 in Superior Court, Wake County.

PEACE v. EMPLOYMENT SEC. COMM'N

[349 N.C. 315 (1998)]

On 5 February 1998, the Supreme Court retained the Employment Security Commission's notice of appeal of a substantial constitutional question pursuant to N.C.G.S. § 7A-30(1) and allowed discretionary review of an additional issue from the unanimous portion of that same decision of the Court of Appeals reversing and remanding an order entered by Cashwell, J., on 12 August 1994 in Superior Court, Wake County. Heard in the Supreme Court 29 May 1998.

*Hilliard & Jones, by Thomas Hilliard, III, for petitioner-appellant Peace.*

*Michael F. Easley, Attorney General, by Andrew A. Vanore, Jr., Chief Deputy Attorney General; John R. Corne, Special Deputy Attorney General; and Sylvia Thibaut, Assistant Attorney General, for respondent-appellant and -appellee Employment Security Commission.*

LAKE, Justice.

The essential question presented for review is whether the Court of Appeals erred in affirming the trial court's determination that the State Personnel Commission improperly placed the burden of proof on the Employment Security Commission of North Carolina (ESC) in a claim for "just cause" termination pursuant to N.C.G.S. § 126-35. For the reasons discussed herein, we conclude that allocating the burden of proof to the disciplined employee does not violate that employee's rights to due process. Accordingly, we affirm the Court of Appeals.

Petitioner, William H. Peace, III, was hired by respondent ESC on 5 October 1985 as its Equal Employment Opportunity (EEO) officer. Petitioner was responsible for the direction of the employee relations section, and his duties included the administration of both internal and external EEO programs. During his employee orientation in 1985, petitioner learned that the ESC office employees maintained a petty fund, with monthly dues of $2.00. Petitioner also learned that participation in the petty fund entitled participants to an occasional cup of coffee from the personnel file room. Petitioner chose to participate in the fund, paid his monthly dues, and occasionally obtained coffee from the file room. However, petitioner's normal habit was to obtain coffee each morning from the agency cafeteria.

Generally, petitioner did not attend the staff meetings where the employees discussed office policies, including the petty fund. At some point following petitioner's 1985 orientation, a local commer-

PEACE v. EMPLOYMENT SEC. COMM'N

[349 N.C. 315 (1998)]

cial coffee service was contracted with, and a new and separate coffee fund, with monthly dues of $3.40, was established. The office employees maintained the new coffee fund separate from and in addition to the office petty fund. Petitioner was not aware of the new coffee fund, and he was not asked to participate in or contribute to the new fund.

On 10 April 1991, petitioner was involved in an incident with a co-worker, Ms. Catherine High, concerning access to coffee from the personnel file room. As was his normal custom, petitioner went to the agency cafeteria the morning of 10 April 1991 to obtain a cup of coffee. However, the cafeteria was out of coffee, so petitioner proceeded to obtain coffee from the personnel file room. As he was leaving the file room, Ms. High confronted petitioner and stated, "[Y]ou are going to have to pay me for that coffee." Petitioner refused to pay for the coffee, and a heated exchange ensued. Following the exchange, petitioner alleged that Ms. High stated, "If you get another cup of coffee and do not pay me, I'm going to get a cup of coffee and scald you with it." Several other office employees witnessed the argument between petitioner and Ms. High. Ms. High also informed her supervisor of the incident.

Petitioner contacted the magistrate's office on the afternoon of 10 April 1991 concerning the alleged threat made by his co-worker, Ms. High. The magistrate advised petitioner that if he believed Ms. High to be capable of carrying out her threat, he should take out a warrant. Petitioner approached Ms. High following his discussion with the magistrate, seeking an apology for her earlier actions and statements. Ms. High refused to provide an apology for the morning coffee incident. Later that same afternoon, petitioner again contacted the Wake County magistrate's office and formally filed criminal charges against his co-worker for communicating a threat. On 21 May 1991, the trial court dismissed the charge as frivolous and ordered petitioner to pay court costs.

Petitioner's supervisors did not contact or question petitioner about the coffee incident pending resolution of the criminal charges. On 5 June 1991, petitioner's immediate supervisor, Gene Baker, informed petitioner by written memorandum of a 6 June 1991 predismissal conference. The conference culminated in a decision to discharge petitioner from employment for "unacceptable personal conduct." A 7 June 1991 letter from Ann Q. Duncan, chairperson of ESC, further explained petitioner's dismissal. The 7 June letter reaffirmed

the dismissal for "unacceptable personal conduct," including the taking of coffee without payment and the filing of frivolous charges against a co-worker. The letter explained that the "unacceptable personal conduct" diminished petitioner's respect among fellow employees and called into question his reputation as the EEO officer for the ESC.

Petitioner filed two appeals from the ESC's decision to discharge him from employment. Petitioner contended (1) that the ESC lacked "just cause" to dismiss him pursuant to N.C.G.S. § 126-35; and (2) that he had been terminated in retaliation for a discrimination complaint he filed against the ESC in 1989, for violation of title VII, section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 (1988).

The Civil Rights Division of the Office of Administrative Hearings (OAH) investigated petitioner's retaliatory discharge claim pursuant to N.C.G.S. § 7A-759. The OAH found that there was reasonable cause to believe that a title VII violation had occurred. The OAH determined that petitioner could select one of three options: (1) receive a right-to-sue letter, (2) commence a contested-case hearing in OAH, or (3) do nothing. Petitioner decided to pursue his retaliatory discharge claim by commencing a contested-case hearing. As for his claim that the ESC lacked "just cause" to dismiss him, petitioner filed another petition for contested-case hearing pursuant to N.C.G.S. § 126-35.

A consolidated hearing was conducted on petitioner's two administrative appeals by Administrative Law Judge (ALJ) Sammie Chess, Jr. on 12-14 July 1993. ALJ Chess determined that under the applicable "just cause" termination statute, the ESC bears the ultimate burden of persuasion to demonstrate the validity of the termination. In his recommended decision to the State Personnel Commission (SPC), the ALJ concluded that the ESC had failed to meet its burden of proof and recommended petitioner's reinstatement with back pay.

In determining petitioner's claim as to retaliatory discharge under title VII, ALJ Chess again put the burden of proof on the ESC. The ALJ then found petitioner was the victim of a retaliatory discharge, and he therefore ordered reinstatement.

The SPC adopted the ALJ's recommendation for petitioner's "just cause" claim with slight modification by an order dated 3 November 1994. The SPC agreed that the ESC bore the burden of proof in a "just cause" termination and affirmed the order reinstating petitioner with back pay.

PEACE v. EMPLOYMENT SEC. COMM'N

[349 N.C. 315 (1998)]

The ESC petitioned for judicial review of the SPC decision and the ALJ decision separately, pursuant to N.C.G.S. § 150B-50. In a 12 August 1994 order, Superior Court Judge Narley L. Cashwell upheld the ALJ's final decision as to petitioner's retaliatory discharge claim. By order dated 13 March 1995, Superior Court Judge Wiley F. Bowen reversed the SPC's decision with prejudice and dismissed petitioner's "just cause" claim on the basis of two prejudicial errors of law: (1) that the SPC inappropriately placed the burden of proof on the ESC, and (2) that the SPC incorrectly concluded that petitioner was dismissed without "just cause."

The ESC then appealed to the Court of Appeals Judge Cashwell's order affirming the decision concerning petitioner's retaliatory discharge claim. Petitioner also appealed to the Court of Appeals Judge Bowen's order reversing the SPC's decision to reinstate him. The Court of Appeals consolidated the ESC's appeal and petitioner's appeal, and both were originally heard in the Court of Appeals on 7 May 1996. *See Employment Sec. Comm'n v. Peace*, 122 N.C. App. 313, 740 S.E.2d 63 (1996). This Court allowed the ESC's petition for discretionary review and thereupon remanded the case to the Court of Appeals in order for the Court of Appeals to reconsider its ruling in light of *Soles v. City of Raleigh Civil Serv. Comm'n*, 345 N.C. 443, 480 S.E.2d 685 (1997). *Employment Sec. Comm'n v. Peace*, 345 N.C. 640, 483 S.E.2d 706 (1997).

On 2 December 1997, the Court of Appeals, on remand, with Judge Greene dissenting, held that the burden of proof in "just cause" claims pursuant to N.C.G.S. § 126-35 may be allocated to an employee without violating due process. The Court of Appeals ruled that while the trial court may not substitute its judgment for that of the agency with respect to the evidence, the trial court did not err in determining that the SPC's decision and order improperly placed the burden of proof on the ESC. *Employment Sec. Comm'n v. Peace*, 128 N.C. App. 1, 14, 493 S.E.2d 466, 474 (1997). Therefore, the Court of Appeals remanded the matter to the superior court for further remand to the SPC for application of the proper burden of proof. *Id.* at 14, 493 S.E.2d at 474-75. Petitioner subsequently filed his notice of appeal, based on the dissent, to this Court on 17 December 1997.

On 6 January 1998, the ESC petitioned this Court for discretionary review seeking to have this Court determine whether the OAH acted *ultra vires* when it adjudicated petitioner's title VII claim. Contemporaneously with its petition for discretionary review, ESC

**PEACE v. EMPLOYMENT SEC. COMM'N**

[349 N.C. 315 (1998)]

filed with this Court a notice of appeal asserting a substantial constitutional question pursuant to N.C.G.S. § 7A-30(1) as to whether the provisions of N.C.G.S. § 7A-759(d) and (e) violate the provisions of Article IV, Sections 1 and 3 of the North Carolina Constitution. This Court entered an order allowing discretionary review and retaining ESC's notice of appeal; upon review, we conclude this petition was improvidently allowed, and such appeal should be dismissed.

With respect to the issue which this Court previously remanded to the Court of Appeals and which is again before us by virtue of the dissent, petitioner asserts that the Court of Appeals incorrectly concluded that this Court's holding in *Soles* mandates the assignment of the burden of proof in "just cause" termination disputes to the employee. Petitioner also contends that the assignment of the burden of proof to the employee following a "just cause" termination violates the procedural protections required by the Due Process Clause of the Fourteenth Amendment. For the reasons stated below, we reject these assertions.

Procedural due process restricts governmental actions and decisions which "deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 47 L. Ed. 2d 18, 31 (1976). A terminated employee must initially demonstrate a "property" interest in continued employment in order to invoke procedural due process protection. *Board of Regents v. Roth*, 408 U.S. 564, 570-71, 33 L. Ed. 2d 548, 557 (1972). State law determines whether an individual employee does or does not possess a constitutionally protected "property" interest in continued employment. *Bishop v. Wood*, 426 U.S. 341, 344, 48 L. Ed. 2d 684, 690 (1976).

[1],[2] Under North Carolina law, an employee has a protected "property" interest in continued employment only if the employee can show a legitimate claim to continued employment under a contract, a state statute or a local ordinance. *Nantz v. Employment Sec. Comm'n*, 290 N.C. 473, 226 S.E.2d 340 (1976). The North Carolina General Assembly created, by enactment of the State Personnel Act, a constitutionally protected "property" interest in the continued employment of career State employees. N.C.G.S. § 126-35 provides, in pertinent part, that "[n]o career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." N.C.G.S. § 126-35(a) (1995). It

is undisputed in the case *sub judice* that petitioner, as a career State employee, is entitled to the "just cause" protection of the State Personnel Act and is thereby imbued with a constitutionally protected "property" interest. *Board of Regents*, 408 U.S. at 577, 33 L. Ed. 2d at 561; *Leiphart v. N.C. Sch. of the Arts*, 80 N.C. App. 339, 348, 342 S.E.2d 914, 921, *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986).

**[3]** While the demonstration of a protected "property" interest is a condition precedent to procedural due process protection, the existence of the "property" interest does not resolve the matter before this Court. We must inquire further and determine exactly what procedure or "process" is due. The fundamental premise of procedural due process protection is notice and the opportunity to be heard. *Cleveland Bd. of Educ. v Loudermill*, 470 U.S. 532, 542, 84 L. Ed. 2d 494, 503 (1985). Moreover, the opportunity to be heard must be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 14 L. Ed. 2d 62, 66 (1965). While the United States Supreme Court has consistently held that some form of hearing is required prior to a final deprivation of a protected "property" interest, the exact nature and mechanism of the required procedure will vary based upon the unique circumstances surrounding the controversy. *Mathews*, 424 U.S. at 333, 47 L. Ed. 2d at 32; *Wolff v. McDonnell*, 418 U.S. 539, 557-58, 41 L. Ed. 2d 935, 952 (1974).

The United States Supreme Court has never required the allocation of a particular burden of proof in an employee termination dispute. In *Lavine v. Milne*, 424 U.S. 577, 47 L. Ed. 2d 249 (1976), the Supreme Court did recognize the important and potentially dispositive effect of the allocation of the burden of proof. However, in that decision, the Court also stated, "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment." *Id.* at 585, 47 L. Ed. 2d at 256. Only in cases involving the deprivation of a fundamental right has the United States Supreme Court found a constitutionally protected right to a particular allocation of the burden of proof. *See Santosky v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599 (1982) (termination of parental rights); *Addington v. Texas*, 441 U.S. 418, 60 L. Ed. 2d 323 (1979) (fundamental right to physical liberty associated with involuntary commitment to state hospital); *Speiser v. Randall*, 357 U.S. 513, 2 L. Ed. 2d 1460 (1958) (fundamental right to freedom of speech). Fundamental rights are those rights "deeply rooted in this Nation's history" and "implicit in the concept of ordered liberty."

*Washington v. Glucksberg,* 521 U.S. 702, 721, 138 L. Ed. 2d 772, 787-88 (1997).

The United States Supreme Court has held that an interest in continued employment is not a constitutionally protected fundamental right, but rather a "property" right subject to traditional procedural due process protections. *Board of Regents,* 408 U.S. at 576-78, 33 L. Ed. 2d at 560-61. In this case, petitioner has failed to identify the impingement of any fundamental right in his "just cause" termination claim.

The United States Supreme Court, in *Mathews v. Eldridge,* 424 U.S. 319, 47 L. Ed. 2d 18, set forth a three-part balancing test to determine the appropriate procedures required to comply with procedural due process protection in any given situation. The Supreme Court in *Mathews* reiterated that procedural due process protection is a flexible, not fixed, concept governed by the unique circumstances and characteristics of the interest sought to be protected. The Court there identified the following three factors:

> first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 47 L. Ed. 2d at 33.

There is no dispute that the initial *Mathews-Eldridge* factor, the private interest affected by the official action, is of significant importance in the matter before this Court. The ability to obtain and retain employment is of utmost concern to individuals as they strive to provide support for themselves and their families, as well as in seeking to achieve their aspirations and goals. The United States Supreme Court has emphasized that the private interest in continued employment cannot be denied. *Loudermill,* 470 U.S. at 541, 84 L. Ed. 2d at 503. However, an individual employee's interest in retaining employment is not absolute and must be evaluated in the light of additional factors. *See Mathews v. Eldridge,* 424 U.S. 319, 47 L. Ed. 2d 18; *Arnett v. Kennedy,* 416 U.S. 134, 40 L. Ed. 2d 15 (1974).

The second factor discussed by the *Mathews* Court requires an objective evaluation of the risk of erroneous deprivation of the pro-

tected interest under the present procedures, as well as the potential value of additional safeguards. It is upon this second *Mathews-Eldridge* factor that the central dispute between petitioner and the ESC rests. Petitioner asserts that the allocation of the burden of proof upon an employee in a "just cause" termination controversy deprives the employee of procedural due process protection because of the serious and significant potential for erroneous decision making. We find this assertion to be without support in either federal or state statutory schemes and case law.

The *Mathews-Eldridge* analysis places emphasis upon the fairness and reliability of the currently utilized procedures. However, procedural due process protection clearly does not prescribe or require a failsafe process that totally precludes any possibility of error. *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 320, 87 L. Ed. 2d 220, 233 (1985). While the United States Supreme Court has consistently held that some type of hearing is required prior to the deprivation of a "property" interest, in only one case, *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287 (1970), has the Supreme Court held that an evidentiary hearing is mandated. *See Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18. The *Goldberg* Court carefully considered the potential impact of the deprivation of welfare benefits and placed considerable emphasis on the unique fact that welfare recipients live on the margin of existence. *Goldberg*, 397 U.S. at 264, 25 L. Ed. 2d at 297. A temporary, but erroneous, deprivation of benefits to a welfare recipient would often have major consequences, depriving "an *eligible* recipient of the very means by which to live." *Id.*

In contrast, a career State employee contesting a "just cause" termination does not face the same dire consequences from loss of employment. A typical terminated State employee, much like the Social Security benefit recipient considered in *Mathews*, may have other independent sources of support, including savings, gifts from family members, as well as government-assistance programs. Additionally, the terminated employee is free to and can readily seek alternate gainful employment, utilizing his or her skills and experience, within the available job market.

The *Mathews-Eldridge* analysis requires careful consideration of the protections and procedures available to "just cause" terminated employees under our current administrative and judicial review system. It is readily apparent that the appeal and review guidelines and

procedures mandated by the North Carolina General Assembly provide ample protection against potential erroneous decisions accompanying "just cause" terminations pursuant to N.C.G.S. § 126-35. The ESC fully complied with the established legislative scheme in the matter now before this Court.

N.C.G.S. § 126-35 establishes a mandatory notice and hearing requirement in "just cause" terminations involving employees, such as petitioner, protected by the State Personnel Act. The statute requires the provision of a written statement detailing for the employee the reasons for the discharge as well as detailed instructions describing access to the administrative-appeals process. The statute provides, in pertinent part:

> In cases of such disciplinary action, the employee shall, before the action is taken, be furnished with a statement in writing setting forth in numerical order the specific acts or omissions that are the reasons for the disciplinary action and the employee's appeal rights. The employee shall be permitted 15 days from the date the statement is delivered to appeal to the head of the department. However, an employee may be suspended without warning for causes relating to personal conduct detrimental to State service, pending the giving of written reasons, in order to avoid undue disruption of work or to protect the safety of persons or property or for other serious reasons. The employee, if he is not satisfied with the final decision of the head of the department, or if he is unable, within a reasonable period of time, to obtain a final decision by the head of the department, may appeal to the State Personnel Commission.

N.C.G.S. § 126-35(a).

The North Carolina statutory scheme provides a detailed mechanism within article 8 of chapter 126 for resolution of the "just cause" dispute. The scope of the administrative-appeal procedure for the State Personnel System is basically set forth in N.C.G.S. § 126-37, which provides in part:

> (a) Appeals involving a disciplinary action, alleged discrimination, and any other contested case arising under this Chapter shall be conducted in the Office of Administrative Hearings as provided in Article 3 of Chapter 150B . . . . The State Personnel Commission shall make a final decision in these cases . . . .
>
> . . . .

(b2) The final decision is subject to judicial review pursuant to Article 4 of Chapter 150B of the General Statutes.

N.C.G.S. § 126-37(a)-(b2) (1995).

The OAH has adopted, pursuant to its rule-making authority, procedures and rules designed to assist a terminated employee in obtaining an accurate and fair resolution of the dispute. The OAH allows the employee access to traditional evidentiary tools and processes in the investigation for preparation and presentation of his complaint. The OAH procedure allows a terminated employee to readily obtain all the information relied on by the State agency in making the termination decision. The North Carolina Administrative Code provides in pertinent part:

Governed by the principles of fairness, uniformity, and punctuality, the following general rules apply:

(1) The Rules of Civil Procedure as contained in G.S. 1A-1, the General Rules of Practice for the Superior and District Courts as authorized by G.S. 7A-34 and found in the Rules Volume of the North Carolina General Statutes . . . shall apply in contested cases in the Office of Administrative Hearings (OAH) unless another specific statute or rule . . . provides otherwise.

. . . .

(5) Except as otherwise provided by statutes or by rules promulgated under G.S. 150B-38(h), the rules contained in this Chapter shall govern the conduct of contested case hearings under G.S. 150B-40 when an Administrative Law Judge has been assigned to preside in the contested case.

26 NCAC 3 .0101(1)-(7) (February 1994).

N.C.G.S. § 150B-43 further creates a final statutory safeguard against an erroneous decision by providing a right to judicial review of final agency decisions. The statute provides in part:

Any person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision under this Article, unless adequate procedure for judicial review is provided by another statute.

N.C.G.S. § 150B-43 (1995).

The statutory protections afford a terminated State employee a comprehensive and effective deterrent against erroneous decisions. A terminated employee may avail himself not only of administrative review incorporating full discovery of information and an evidentiary hearing, but may also obtain judicial review of the final agency decision. We conclude that this procedure fully comports with the constitutional procedural due process requirements mandated by the Fourteenth Amendment, and no additional safeguards are needed to avoid erroneous deprivation.

The third and final factor set out by the *Mathews-Eldridge* Court focuses on the government's interest in the dispute, including the government function involved. Consideration of this factor, the government interest involved, supports the allocation of the burden of proof to the terminated State employee in "just cause" cases. The State of North Carolina, through each of its agencies, must remain a responsible steward of the public trust by maintaining an efficient and productive government. In order to provide for efficient administration, State officials must promote and encourage employee productivity and discipline. The State Personnel System, created by chapter 126 of the General Statutes, strives to implement a program of employee management "based on accepted principles of personnel administration and applying the best methods as evolved in government and industry." N.C.G.S. § 126-1 (1995). It is imperative that agency officials maintain adequate supervision and control over personnel matters. *See Arnett v. Kennedy*, 416 U.S. at 168, 40 L. Ed. 2d at 41. The maintenance of an efficient and productive government or private employment workforce requires the availability and utilization of appropriate disciplinary procedures.

The United States Supreme Court has never indicated that procedural due process requires a particular allocation of the burden of proof among parties in a civil matter. The Supreme Court has, however, addressed the determination of the appropriate standard of proof, recognizing that the determination of an appropriate standard of proof must reflect the value society places on the individual interest sought to be protected. *Santosky*, 455 U.S. at 754-55, 71 L. Ed. 2d at 607. The *Santosky* Court utilized the *Mathews-Eldridge* balancing test to determine the appropriate standard of proof in a case involving the termination of parental rights, reaffirming the *Mathews-Eldridge* test as the benchmark for procedural due process compliance. *Id.*

**[4]** In addition to the *Mathews-Eldridge* analysis, we must also consider applicable North Carolina law addressing the allocation of the burden of proof. The North Carolina Constitution, like the United States Constitution, does not compel the allocation of the burden of proof to either party in a "just cause" employment termination controversy. Furthermore, the North Carolina General Assembly has not specifically addressed the proper allocation of the burden of proof in "just cause" termination cases. The State Personnel Commission likewise has not dictated a specific allocation of the burden of proof pursuant to its rule-making authority found in N.C.G.S. §§ 126-4(6), (7a), (9), (11) and 126-26.

In the absence of state constitutional or statutory direction, the appropriate burden of proof must be "judicially allocated on considerations of policy, fairness and common sense." 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 37 (4th ed. 1993). Two general rules guide the allocation of the burden of proof outside the criminal context: (1) the burden rests on the party who asserts the affirmative, in substance rather than form; and (2) the burden rests on the party with peculiar knowledge of the facts and circumstances. *Id.* The North Carolina courts have generally allocated the burden of proof in any dispute on the party attempting to show the existence of a claim or cause of action, and if proof of his claim includes proof of negative allegations, it is incumbent on him to do so. *Johnson v. Johnson*, 229 N.C. 541, 544, 50 S.E.2d 569, 572 (1948).

Applying these general principles to the case *sub judice*, it is clear that an employee terminated pursuant to the "just cause" provision of N.C.G.S. § 126-35 should bear the burden of proof in an action contesting the validity of that termination. Petitioner, the terminated employee, is the party attempting to alter the *status quo*. The burden should appropriately rest upon the employee who brings the action, even if the proof of that position requires the demonstration of the absence of certain events or causes. Neither party in a "just cause" termination dispute has peculiar knowledge not available to the opposing party. A terminated employee may readily utilize the procedures outlined in chapter 126 and section 1A-1 of the North Carolina General Statutes, as well as title 26 of the North Carolina Administrative Code, to obtain any and all necessary information to establish and advocate his or her position.

In the decision below, the Court of Appeals correctly noted that this Court's decision in *Soles* controls the judicial allocation of the burden of proof in "just cause" employee terminations. *Employment*

*Sec. Comm'n v. Peace,* 128 N.C. App. at 13-14, 493 S.E.2d at 474. In *Soles,* a city employee was terminated because of "personal conduct detrimental to City service." *Soles,* 345 N.C. at 445, 480 S.E.2d at 686. We concluded in *Soles* that the terminated city employee did not possess a constitutionally protected "property" interest in continued employment, thereby triggering procedural due process protection. *Id.* at 447, 480 S.E.2d 688. However, in reaching the *Soles* decision, we stated that "[a]ssuming a situation existed in which an employee was entitled to procedural due process protection, we agree with the City and hold that the allocation of the burden of proof to a disciplined employee does not violate the employee's guarantees of procedural due process." *Id.* at 448, 480 S.E.2d at 688.

The dispute between petitioner and the ESC raises the issue addressed by this Court in *Soles.* While the *Soles* controversy did not directly involve a "property" interest triggering due process protection, we nevertheless addressed the proper allocation of the burden of proof in employee termination cases involving such a protected interest. *Id.* We noted that the *Mathews-Eldridge* balancing test provided the proper framework to evaluate the allocation of the burden of proof. *Id.* As previously discussed, application of the *Mathews-Eldridge* factors to the dispute now before this Court leads to the inevitable conclusion that the individual "property" interest sought to be protected by petitioner, while important and significant, is decisively outweighed by the substantial government interest in maintaining a productive and efficient workforce. There is also a very minimal risk of erroneous decision making when utilizing the existing administrative and judicial protections.

For the reasons stated herein, we affirm the decision of the Court of Appeals and hold that the burden of proof is properly allocated to the employee in "just cause" termination cases pursuant to N.C.G.S. § 126-35. We further hold that respondent North Carolina Employment Security Commission's petition for discretionary review as to the additional issue was improvidently allowed, and we hereby dismiss respondent's notice of appeal on an asserted constitutional claim.

AFFIRMED IN PART; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART; DISMISSED IN PART.

Justice WYNN did not participate in the consideration or decision of this case.

Justice FRYE concurring in part and dissenting in part.

I agree with the majority opinion in holding that respondent's petition for discretionary review of an additional issue was improvidently allowed and in dismissing respondent's notice of appeal asserting a substantial constitutional question. I dissent only from the majority's affirmance of the Court of Appeals' holding that the employee has the burden of proof in "just cause" termination cases pursuant to N.C.G.S. § 126-35.

In *Soles v. City of Raleigh Civil Serv. Comm'n*, 345 N.C. 443, 480 S.E.2d 685 (1997), we said, "[a]ssuming a situation existed in which an employee was entitled to procedural due process protection, . . . the allocation of the burden of proof to a disciplined employee does not violate the employee's guarantees of procedural due process." *Id.* at 448, 480 S.E.2d at 688. In this case, on remand, the Court of Appeals decided, and the majority here concludes, that the burden of proof in "just cause" claims pursuant to N.C.G.S. § 126-35 may be allocated to an employee without violating due process. I agree. However, that is not the issue before us.

In the instant case, the State Personnel Commission (SPC) adopted the recommendation of the Administrative Law Judge (ALJ) placing the burden of proof on the Employment Security Commission (ESC) to demonstrate "just cause" for petitioner's termination. Upon judicial review, the superior court held that this was an error of law. The question before the Court of Appeals then was whether it was error for the SPC, the agency charged with the administration and enforcement of the State Personnel Act, to allocate the burden of proof in "just cause" termination disputes to the employer in the absence of any statutory guidance. *Soles* does not answer that question, and I do not believe that the majority here directly addresses that issue.

On the merits, Judge Smith, writing for the majority of the Court of Appeals' panel and citing 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 30 (4th ed. 1993), explains the distinctions between the burden of producing evidence and the burden of persuasion. He then continues as follows:

> When statutes fail to dictate with whom the burden of persuasion lies, the burden is judicially allocated based on "considerations of policy, fairness and common sense . . . ." [1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 37 (4th

ed. 1993).] For cases in which the burden of proof remains unallocated, it has been suggested that the burden be placed "upon the party who has peculiar knowledge of the facts and who, therefore, is better able to produce proof." *Id.* In the instant case, the party having particular knowledge as to the cause of Peace's dismissal is ESC. An employee allegedly dismissed for "just cause" would be faced with an almost insurmountable task in attempting to prove he or she was dismissed for something short of "just cause," in that the employee would be forced to prove a negative. We believe the better view is to allocate the initial burden of proof to the employer to prove that an employee was dismissed for "just cause" and then have the employee come forward with evidence showing that his or her dismissal was made without "just cause." Here, SPC expressly adopted the ALJ's Conclusion of Law Number 2, which states "[w]here just cause is an issue, the Respondent [ESC] bears the ultimate burden of persuasion." Taking into account "the specialized expertise of the staff of an administrative agency," we give great deference to SPC's decision to place the burden of proof on ESC. [*High Rock Lake Ass'n v. North Carolina Envtl. Management Comm'n*, 51 N.C. App. 275, 279, 276 S.E.2d 472, 475 (1981).]

*Employment Sec. Comm'n v. Peace*, 128 N.C. App. 1, 12, 493 S.E.2d 466, 473 (1997). I agree. I also agree with Judge Greene's dissenting opinion in which he said:

I agree with the majority's well-reasoned explanation of why the burden of proof in a termination without just cause case is more fairly placed upon the employer. I add only that this Court has repeatedly acquiesced in the placement of the burden of proof on the employer in just cause cases. . . . There is no pre-existing rule mandating placement of that burden on the employee in this case. *Soles* does not, either explicitly or implicitly, require courts to place the burden of proof on the employee in just cause cases.

*Id.* at 15, 493 S.E.2d at 475 (Greene, J., dissenting).

Again, in *Soles*, the City of Raleigh Civil Service Commission had a preexisting rule that a terminated employee must bear the burden of proving that the termination was unjustified. We held that Soles had no constitutionally protected property interest in his continued employment with the city, but even if he had such an interest, the allocation of the burden of proof to him would not violate procedural due process. *Soles*, 345 N.C. at 447-48, 480 S.E.2d at 688. However, in

this case, although the General Assembly certainly could have directed by statute which party must carry the burden of proof in a disputed "just cause" termination, it has not. Thus, as the majority correctly notes, it is a matter for judicial allocation.

For the reasons stated in both the majority and dissenting opinions of the Court of Appeals, I would hold that the burden in this case was properly allocated to respondent ESC.

Justice WHICHARD joins in this concurring and dissenting opinion.