STROUD, Judge.
*616 Where just cause existed to terminate petitioner's employment, the trial court did not err in upholding the Final Agency Decision affirming her termination. Where petitioner did not allege discrimination based upon a protected class, petitioner's workplace complaints were not protected conduct. Where rules implemented after 1998 do not apply to petitioner, a statute effective after 1998 shifting the burden of proof to respondent did not apply to petitioner.
I. Factual and Procedural Background
Sheila Robinson (petitioner) began her employment with UNC Hospitals in May 1992, in the Patient Account Services Department. She was employed with UNC Hospitals, which became part of the University of North Carolina Health Care System (respondent) as of 1 November 1998, continuously from May 1992 until 20 November 2012, at which point her employment was terminated. Petitioner had achieved career State employee status, as defined by N.C. Gen.Stat. § 126-1.1, by 31 October 1998. In January 2001, petitioner was transferred to the Accounts Payable Department, in the position of Accounts Payable Technician, and remained there until her employment was terminated in 2012.
On 6 December 2012, petitioner filed a grievance challenging her termination. Following a meeting concerning petitioner's grievance, petitioner received a written response *900 on 4 January 2013, in which the vice president and CFO of UNC Hospitals upheld the decision to terminate petitioner's employment. Petitioner appealed this decision, which was investigated and reviewed by an administrative panel. The panel recommended that petitioner's termination be upheld, and the panel's recommendation was followed. Petitioner was notified of this decision by letter dated 8 April 2013.
Petitioner sought a further administrative hearing of the issue on 16 April 2013. The hearing was held on 17 September 2013. On 30 September 2013, the panel issued its recommendation that petitioner's termination be upheld and her requested relief be denied. The President of UNC Hospitals accepted the panel's recommendation in its entirety, upheld petitioner's termination, and denied her requested relief. The Final Agency Decision containing this determination was issued and served on 25 October 2013.
On 22 November 2013, petitioner filed a petition for judicial review in Durham County Superior Court. On 27 November 2013, respondent filed a response to the petition for judicial review. On 14 July 2014, the trial court heard arguments on the petition.
*617 Tammy Stone (Stone), who became petitioner's supervisor in January 2012, testified that petitioner's termination was based upon personal conduct, including a significant past record of unfounded allegations and complaints about co-workers and managers in violation of respondent's Code of Conduct, explosive behavior in department meetings, argumentative and disrespectful interactions with supervisors, and repeated and unsupported claims that she was being singled out or treated differently. The dismissal notice that petitioner received stated that petitioner's discharge was based on her personal conduct, specifically: (1) she alleged that policies were not being applied equally to her on multiple occasions; (2) she alleged that she alone was being held to respondent's Time and Attendance policy on multiple occasions; (3) she alleged that other Accounts Payable staff were receiving preferential treatment; (4) she alleged discrimination; (5) she alleged harassment and intimidation by Stone; (6) she alleged ostracism from her coworkers; (7) she alleged that she was unfairly given a greater workload on multiple occasions; (8) she alleged that she was not receiving proportionate assistance from the department volunteer on multiple occasions; (9) she alleged that employees with children or dependents were receiving unfair benefits with regard to respondent's "Notification Less than 24 Hours in Advance" policy. Stone acknowledged that petitioner performed her job adequately, and that job performance did not play a part in her termination.
On 18 July 2014, it entered its order, affirming the Final Agency Decision. Petitioner appeals.
II. Standard of Review
Where the petitioner alleges that the agency decision was either unsupported by the evidence, or arbitrary and capricious, the [reviewing] court applies the 'whole record test' to determine whether the agency decision was supported by substantial evidence contained in the entire record. Where the petitioner alleges that the agency decision was based on error of law, the reviewing court must examine the record de novo, as though the issue had not yet been considered by the agency.
Campbell v. N.C. Dep't of Transp., Div. of Motor Vehicles, 155 N.C.App. 652, 657, 575 S.E.2d 54, 58 (2003) (quoting Souther v. New River Area Mental Health, 142 N.C.App. 1, 3-4, 541 S.E.2d 750, 752, aff'd per curiam, 354 N.C. 209, 552 S.E.2d 162 (2001) ).
*618 III. Final Agency Decision
Petitioner first contends that the trial court erred in concluding that the Final Agency Decision was not erroneous because the UNC Health Care Code of Conduct which was adopted after 31 October 1998 does not apply to her. We disagree.
Petitioner contends that, as a career State employee, and having achieved that status prior to 31 October 1998, petitioner was not subject to "rules regarding discipline or discharge adopted after 31 October 1998." Petitioner relies upon N.C. Gen.Stat. § 116-37, which states that "an employee who has achieved career State employee status as defined by G.S. 126-1.1 by October 31, 1998, shall be subject to the rules regarding discipline *901 or discharge that were effective on October 31, 1998, and shall not be subject to the rules regarding discipline or discharge adopted after October 31, 1998." N.C. Gen.Stat. § 116-37(d)(2) (2013). Petitioner contends that she was terminated pursuant to respondent's Code of Conduct policy, which allowed respondent to terminate an employee without prior written counseling or warning. She contends, however, that because this policy was adopted after 31 October 1998, it did not apply to her.
Respondent argues that the Code of Conduct policy is not a "rule regarding discipline or discharge" which was not subject to change after 31 October 1998, but is simply an "administrative policy governing working conditions and behavioral expectations for employees[.]" In fact, the very same subsection of N.C. Gen.Stat. § 116-37(d) upon which petitioner relies includes other provisions, which make the distinction between written work rules and "rules regarding discipline or discharge." The entire subsection is as follows:
(2) The board of directors may adopt or provide for rules and regulations concerning, but not limited to, annual leave, sick leave, special leave with full pay or partial pay supplementing workers' compensation payments for employees injured in accidents arising out of and in the course of employment, working conditions, service awards and incentive award programs, grounds for dismissal, demotion, or discipline, other personnel policies, and any other measures that promote the hiring and retention of capable, diligent, and effective career employees. However, an employee who has achieved career State employee status as defined by G.S. 126-1.1 by October 31, 1998, shall not have his or her compensation reduced *619 as a result of this subdivision. Further, an employee who has achieved career State employee status as defined by G.S. 126-1.1 by October 31, 1998, shall be subject to the rules regarding discipline or discharge that were effective on October 31, 1998, and shall not be subject to the rules regarding discipline or discharge adopted after October 31, 1998.
N.C. Gen.Stat. § 116-37(d)(2).
Petitioner's argument is essentially that the legislation which created the UNC Health Care System and established its governance including authorization to "adopt or provide for rules and regulations" regarding employment did not allow the Board of Directors to adopt any new rules governing behavior of employees in the workplace if a violation of one of those rules could ultimately lead to dismissal or discharge. Thus, the UNC Code of Conduct, as adopted initially or as amended over the years, could never apply to any employee who had achieved career State employee status by 31 October 1998. We disagree.
Under N.C. Gen.Stat. § 116-37, the Board of Directors of the UNC Health System had the authority to adopt written work rules including "grounds for dismissal, demotion, or discipline, other personnel policies, and any other measures that promote the hiring and retention of capable, diligent, and effective career employees." The Code of Conduct provisions in question are the type of rules which are allowed under N.C. Gen.Stat. § 116-37(d)(2). Respondent correctly notes that petitioner's argument would lead to the "absurd result" that her work rules and job description and duties would have been frozen in place as of 1998.
In addition, N.C. Gen.Stat. § 126-35 provides that a career State employee under Chapter 126 of the North Carolina General Statutes may be terminated for "just cause." N.C. Gen.Stat. § 126-35(a) (2013). This provision was made effective by the legislature in 1990, and was therefore a rule in place "effective on October 31, 1998[.]" See 1989 N.C. Sess. Laws, c. 1025, § 2 (eff. 1990). "Just cause" may be based upon unsatisfactory job performance or unacceptable personal conduct; the North Carolina Administrative Code defines "unacceptable personal conduct" as:
(d) the willful violation of known or written work rules; [or]
(e) conduct unbecoming a state employee that is detrimental to state service;
*902 25 N.C. Admin. Code 1J.0604(b), .0614(8) (2015).
*620 The provisions of the Code of Conduct in question are "written work rules" and there is no dispute that they were also known to petitioner. As noted above, "written work rules" of this type are authorized by N.C. Gen.Stat. § 116-37(d)(2), and this authorization existed as of 31 October 1998 and has not changed. The order notes that the provisions petitioner had violated were the following:
3. Inappropriate or disruptive behavior defined by the policy includes: inappropriate words that are disrespectful, insulting, demeaning or abusive; making demeaning comments or intimidating remarks; having inappropriate arguments with staff; making negative comments about other health care team members; having outbursts of anger; acting in a manner that others would describe as bullying.
4. Inappropriate or disruptive behavior defined by the policy includes: inappropriate actions/inactions that includes refusing to comply with known and generally accepted practice standards such that the refusal inhibits staff from delivering quality care; failing to work collaboratively or cooperatively with others; creating rigid or inflexible barriers for requests for assistance/cooperation.
Petitioner does not challenge the specific findings of fact as to the instances of her behavior, which are obviously in violation of these policies. Because petitioner's conduct fell within the definition of unacceptable personal conduct, we hold that the reviewing agency did not err in concluding that there was just cause to terminate petitioner, and the trial court did not err in relying upon the Final Agency Decision.
Petitioner further contends that, as a career State employee, she possessed a constitutionally-protected property interest in her continued employment, which could not be taken from her absent proper application of law. However, her argument that her dismissal was in violation of law is based upon the same contention as her first argument, that the Code of Conduct was not applicable to her and thus we reach the same result. For the reasons stated above, proper legal procedure was followed in petitioner's termination.
Petitioner also contends that her complaints about her treatment were constitutionally protected statements concerning her unfair treatment, and thus did not constitute a proper basis for the Final Agency Decision. She contends that termination for her complaints constituted retaliation under Title VII of the Civil Rights Act of 1964, *621 42 U.S.C. § 2000e. However, petitioner presented no evidence that her complaints concerned any protected status, such as age, race, or sex discrimination, nor does she make such an argument to this Court.
Other courts have held that a mere complaint of harassment or discrimination in general, without any connection to a protected class, is insufficient to establish protected activity. Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir.2011) ; Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir.1998). In Dowe, the Fourth Circuit held that "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary" to establish a claim of retaliation, and that "an employer cannot take action because of a factor of which it is unaware [.]" Dowe, 145 F.3d at 657. In the instant case, petitioner failed to put respondent on notice of any relevant factors concerning a protected class; as a result, respondent had no knowledge that petitioner was engaged in a protected activity, and could not have engaged in retaliation. We hold that, as petitioner failed to raise the issue of discrimination based upon a protected class, petitioner's conduct in her complaints was not protected, and respondent's termination based upon those complaints was not retaliation.
This argument is without merit.
IV. Burden of Proof
Petitioner next contends that the agency and trial court erred in placing the burden of proof upon her, rather than upon respondent.
In 1998, an employee terminated for just cause pursuant to N.C. Gen.Stat. § 126-35 had the burden of proof in an action contesting *903 the validity of that termination. Peace v. Employment Sec. Comm'n, 349 N.C. 315, 328, 507 S.E.2d 272, 281 (1998). In Peace, our Supreme Court observed that neither state nor federal constitution, nor statute, had explicitly placed the burden of proof in employment termination cases on either party; it held that, "[i]n the absence of state constitutional or statutory direction, the appropriate burden of proof must be judicially allocated on considerations of policy, fairness and common sense." Id. (citations and quotations omitted). Relying on the general principle that the burden is on the party asserting a claim to show the existence of that claim, the Court held that this placed the burden of proof upon the petitioner. Id.
Petitioner notes, however, that in 2001, N.C. Gen.Stat. § 126-35 was amended, providing that "[i]n contested cases conducted pursuant to Chapter 150B of the General Statutes, the burden of showing that a career *622 State employee subject to the State Personnel Act was discharged, suspended, or demoted for just cause rests with the department or agency employer." N.C. Gen.Stat. § 126-35(d) (2013) ; 2000 N.C. Sess. Laws, c. 190, § 13 (eff. 2001). This statute has since been repealed, see 2013 N.C. Sess. Laws, c. 382, § 6.1, and similar provisions can be found in N.C. Gen.Stat. § 126-34.02(d) (2013). But this statute, in its current form, is contained within Article 8 of Chapter 126 of the North Carolina General Statutes and does not apply to this case.
N.C. Gen.Stat. § 116-37(d), in addition to the provisions quoted above, provides in pertinent part as follows:
(d) Personnel.-Employees of the University of North Carolina Health Care System shall be deemed to be employees of the State and shall be subject to all provisions of State law relevant thereto; provided, however, that except as to the provisions of Articles 5, 6, 7, and 14 of Chapter 126 of the General Statutes, the provisions of Chapter 126 shall not apply to employees of the University of North Carolina Health Care System, and the policies and procedures governing the terms and conditions of employment of such employees shall be adopted by the board of directors; provided, that with respect to such employees as may be members of the faculty of the University of North Carolina at Chapel Hill, no such policies and procedures may be inconsistent with policies established by, or adopted pursuant to delegation from, the Board of Governors of The University of North Carolina.
N.C. Gen.Stat. § 116-37(d) (emphasis added).
Only four specific Articles of Chapter 126 are applicable to employees of the University of North Carolina Health System, and Chapter 8 is not one of them. Petitioner has failed to demonstrate that the burden of proof applicable to her case has changed, so it remains on the employee who is challenging just cause for termination, as held by our Supreme Court in Peace. We also note that the result would have been the same even if the burden of proof had been upon respondent, since petitioner did not deny that she behaved in the manner alleged by respondent and she has not challenged any of the findings of fact as unsupported by substantial evidence. Petitioner's claim is simply that she was entitled to behave as she did, essentially as a matter of law; the Hearing panel, the president of UNC Hospitals, the superior court, and this Court all disagree.
*623 We hold therefore that the agency and trial court did not err in placing the burden of proof upon petitioner.
This argument is without merit.
V. Termination of Employment
Lastly, petitioner contends that the trial court erred in concluding that respondent had just cause to terminate her employment. We disagree.
Petitioner contends that respondent lacked just cause to terminate her employment, because her actions did not fall within the definition of unacceptable personal conduct. The North Carolina Administrative Code defines unacceptable personal conduct as:
(a) conduct for which no reasonable person should expect to receive prior warning;
(b) job-related conduct which constitutes a violation of state or federal law;
*904 (c) conviction of a felony or an offense involving moral turpitude that is detrimental to or impacts the employee's service to the State;
(d) the willful violation of known or written work rules;
(e) conduct unbecoming a state employee that is detrimental to state service;
(f) the abuse of client(s), patient(s), student(s) or a person(s) over whom the employee has charge or to whom the employee has a responsibility or an animal owned by the State;
(g) absence from work after all authorized leave credits and benefits have been exhausted; or
(h) falsification of a state application or in other employment documentation.
N.C. Admin. Code 1J.0614(8).
Respondent contended that petitioner's conduct violated its Code of Conduct, and that doing so was prohibited disruptive behavior. As stated above, petitioner had the burden of proving that her conduct was not unacceptable personal conduct as defined in the statute. Petitioner did not deny that she had behaved in the manner respondent alleged.
*624 She has not alleged on appeal that any of the facts below were unsupported by the evidence. Petitioner did not meet her burden at trial and has not done so upon appellate review. We hold, therefore, that the trial court did not err in upholding the Final Agency Decision's conclusion that respondent had just cause to terminate petitioner's employment.
AFFIRMED.
Judges CALABRIA and TYSON concur.